■ HARRIMAN GROUP, INC., et al., Appellants, v JOSEPHINE S. NAPOLITANO, Respondent. [623 NYS2d 224] —Judgment, Supreme Court, New York County (Helen E. Freedman, J.), entered August 5, 1994, which denied petitioners' application to stay arbitration before the National Association of Securities Dealers ("NASD"), granted respondent's motion to compel arbitration, and denied respondent's motion to disqualify counsel, without prejudice to consideration of the matter by the arbitrator, unanimously reversed, on the law, to the extent appealed from, as limited by the brief, the petition granted and the motion to compel arbitration denied, with costs.

This matter arises out of an oral agreement purportedly

made in November 1991 or February 1992 between respondent Josephine Napolitano and petitioners Mark A. Hanna and Brian Scanlon. Respondent alleges that, in exchange for services rendered by herself and her husband, she was to be given an ownership interest of 15% in petitioner The Harriman Group, Inc. Petitioners Hanna and Scanlon are officers, directors and shareholders of The Harriman Group, which was originally acquired by Hanna in March 1992 as Discount Investment Corp. and subsequently renamed. The Harriman Group was registered with the NASD on or about July 15, 1992. Respondent Napolitano worked with The Harriman Group and its predecessor from June 1992 to October 1992 as a revenue and expense controller. She claims that, in accordance with the oral agreement, she performed various services with respect to the organization and development of the company, including the location and selection of key personnel, office space, equipment and furnishings. She was not registered with the NASD during this period of time, having previously been employed by Citicorp as an assistant vice-president with no experience in the securities business.

In May 1993, Hanna filed suit in his individual capacity against Napolitano and her husband, together with their corporation, Prime Net Partners, asserting both contract and fraud claims in connection with their failure to repay $29,685.00 in loans. In March 1994, respondent Napolitano filed a statement of claim pursuant to sections 1, 8 and 12 of the NASD Code of Arbitration Procedure, seeking to establish a 15% ownership interest in The Harriman Group based upon her asserted agreement with petitioners. Petitioners filed a timely application to stay arbitration (CPLR 7503 [b]) by way of an order to show cause dated May 13, 1994. Respondent moved to compel arbitration (CPLR 7503 [a]) and to disqualify plaintiffs' attorney.

Respondent does not claim that she is a party to a written agreement to arbitrate her dispute with petitioners. Rather, she asserts the right to compel petitioners to proceed to arbitration under the provisions of the NASD Code of Arbitration Procedure. At issue on this appeal, therefore, is whether a contract allegedly made in late 1991 or early 1992 is subject to the general arbitration provisions governing the National Association of Securities Dealers, an organization with which respondent was not registered until 1993.

While it is the subject of intense dispute among the parties to this appeal, the subject matter of the dispute arguably falls within the ambit of the NASD Code of Arbitration Procedure.

Section 1 of the Code incorporates a broad arbitration provision encompassing matters "arising out of or in connection with the business of any member of the Association" that originates:

"(1) between or among members;

"(2) between or among members and associated persons;

"(3) between or among members or associated persons and public customers, or others; and

"(4) between or among members, registered clearing agencies with which the Association has entered into an agreement to utilize the Association's arbitration facilities and procedures, and participants, pledges, or other persons using the facilities of a registered clearing agency, as these terms are defined under the rules of such a registered clearing agency."

This dispute is one between a present member of the NASD, The Harriman Group, and "others" (however that term may be interpreted under NASD regulations), and the controversy may be said to arise "out of or in connection with the business of" The Harriman Group.

Section 8 of the Code, governing "INDUSTRY AND CLEARING CONTROVERSIES", provides that an eligible dispute may be arbitrated "at the instance of:

"(1) a member against another member;

"(2) a member against a person associated with a member or a person associated with a member against a member; and,

"(3) a person associated with a member against a person associated with a member."

Respondent, as a person currently associated with a member, can presumably seek to arbitrate a claim against a current member. However, this does not end the analysis.

The alleged oral agreement from which this dispute arose was made at a time when petitioner The Harriman Group, Inc. was not yet in existence nor a member of the NASD. Likewise, in 1991 respondent was not yet a registered representative, and at no time was she employed by The Harriman Group as an "associated person", a designation that includes "every sole proprietor, partner, officer, director, or branch manager of any member, or any natural person occupying a similar status or performing similar functions, or any natural person engaged in the investment banking or securities business who is directly or indirectly controlling or controlled by such member" (NASD By-Laws, art I, ¶ 1101 [m]). Respondent's resort to the NASD Code of Arbitration Procedure is

predicated on her status, beginning in July 1993, as a person associated with Camelot Investment and, subsequently, Joseph Roberts and Co. Similarly, she relies on the status of The Harriman Group's predecessor firm as a "member" of the NASD to bring it within the arbitration provision of the NASD rules.

As this Court stated in *Schenkers Intl. Forwarders v Meyer* (164 AD2d 541, 543, *lv denied* 78 NY2d 852), "Upon a motion pursuant to CPLR 7503, the court must first make a determination whether the parties have entered into a valid arbitration agreement *(O'Brien v Bache Halsey Stuart Shields,* 80 AD2d 846) and, if so, whether the issue sought to be submitted to arbitration falls within the scope of that agreement *(Matter of County of Rockland [Primiano Constr. Co.],* 51 NY2d 1, 7). Where the intention to arbitrate a particular matter is equivocal, a party may not be compelled to proceed to arbitration *(Crimmins Contr. Co. v City of New York,* 74 NY2d 166, 171; *Matter of Stigwood Org. [Atlantic Rec. Corp.],* 83 AD2d 123, 126-127)."

Accepting the reasoning advanced by respondent on this appeal, she still has not demonstrated grounds to compel petitioners to arbitrate this dispute. It may be conceded, for the sake of argument, that respondent has established that the subject matter of this controversy is within the contemplation of the NASD Code of Arbitration Procedure. It may further be conceded that she and The Harriman Group, including petitioners Hanna and Scanlon, as its officers and directors (NASD Manual, By-Laws, art I, ¶ 1101 [m]), are subject to the arbitration provisions of the National Association of Securities Dealers. Respondent has nevertheless failed to demonstrate that petitioners, upon entering into the asserted agreement, consented to arbitrate any dispute concerning their obligation to convey an interest in the firm to respondent.

Respondent's status as an "associated person" with a member firm of the NASD and, hence, her right to invoke the NASD Code of Arbitration Procedure did not arise until over a year after the asserted oral contract was made. Thus, she can hardly argue that, at the time the contract was made, the parties contemplated submitting any dispute to arbitration before the NASD. It is not enough that parties are presently obliged to arbitrate disputes arising out of their activities in the securities industry. That much is merely fortuitous. Respondent must demonstrate that they intended to arbitrate disputes arising out of the particular oral contract of Novem-

ber 1991 or February 1992, either at the time of contracting or by subsequent agreement. This she has failed even to attempt.

Due consideration must be accorded to the policy that "arbitration agreements are favored in the law and are to be broadly construed. An order to arbitrate should not be denied unless it can be said that the arbitration clause is not susceptible of a reasonable interpretation covering the asserted dispute. In short, doubts should be resolved in favor of coverage." *(Coudert v Paine Webber Jackson & Curtis,* 705 F2d 78, 81 [2d Cir], citing *Steelworkers v Warrior & Gulf Co.,* 363 US 574; *see, Flanagan v Prudential-Bache Sec.,* 67 NY2d 500, 506-507, *cert denied* 479 US 931.) However, the Court must also take cognizance of the countervailing consideration that a party who consents to arbitrate "waives in large part many of his normal rights under the procedural and substantive law of the State, and it would be unfair to infer such a significant waiver on the basis of anything less than a clear indication of intent" *(Matter of Marlene Indus. Corp. [Carnac Textiles],* 45 NY2d 327, 333-334). Therefore, "a party will not be compelled to arbitrate and, thereby, to surrender the right to resort to the courts, absent 'evidence which affirmatively establishes that the parties expressly agreed to arbitrate their disputes' * * * The agreement must be clear, explicit and unequivocal * * * and must not depend upon implication or subtlety" *(Matter of Waldron [Goddess],* 61 NY2d 181, 183-184).

Respondent's attempt to fashion her claim to fit within the ambit of the NASD Code of Arbitration Procedure will not distract attention from the attendant circumstances in which it arose. This dispute does not concern any relationship between respondent and The Harriman Group that was subject to a contemporaneous agreement to arbitrate *(cf., Fleck v E.F. Hutton Group,* 891 F2d 1047 [post-termination tort claims arise out of employment and are governed by applicable arbitration agreement]; *Singer v Jefferies & Co.,* 78 NY2d 76 [employee's damages resulting from firm's illegal activities subject to employment arbitration agreement]). Therefore, this Court will not insinuate an agreement to arbitrate where none was contemplated at the time the subject oral contract was made. The arbitration provision, subsequently binding upon the parties, does not clearly include the subject matter of the dispute within its scope *(cf., Clark v Kidder, Peabody & Co.,* 636 F Supp 195, 197 [SD NY] [arbitration provision in customer agreement applied to transaction occurring under prior agreement]; *Matter of South Orangetown Cent. School*

*Dist. [Civil Serv. Empls. Assn.]*, 173 AD2d 1071, 1072-1073, *lv denied* 79 NY2d 751 [express retroactivity clause in contract providing for arbitration of labor disputes]), and the independent and subsequent submission of the respective parties to rules promulgated by the NASD is not referable to a mutual intention to submit a pre-existing contract dispute to arbitration before that Association. Concur—Wallach, J. P., Rubin, Ross, Asch and Mazzarelli, JJ.