[768 NYS2d 436]

CREDIT SUISSE FIRST BOSTON CORPORATION, Respondent, v WILLIAM PITOFSKY et al., Appellants.

First Department, November 25, 2003

## APPEARANCES OF COUNSEL

*Quinn Emanuel Urquhart Oliver & Hedges, LLP (Michael B. Carlinsky, Kevin S. Reed* and *Partha P. Chattoraj* of counsel), for respondent.

*Wechsler & Cohen, LLP (David B. Wechsler* and *Marc O. Sheridan* of counsel), for appellants.

## OPINION OF THE COURT

WILLIAMS, J.

The principal issue on this appeal, and a matter of first impression in this Department, is whether an arbitration provision in the employment agreements between a securities broker-dealer and its employees, the latter who are "registered representatives" of, inter alia, the National Association of Securities Dealers (NASD) and the New York Stock Exchange (NYSE) by virtue of their prior execution of the Uniform Application for Securities Industry Registration or Transfer (Form U-4), supersedes the arbitration provision contained in Form U-4.

Appellants were hired by Credit Suisse First Boston (CSFB), a NYSE member, in 1985 and 1997, respectively, as real estate salespersons to assist in liquidating multi-billion dollar real estate portfolios. Each was required, upon commencing his employment, to execute a Form U-4 transferring his securities industry registrations to CSFB. Each appellant used the Form U-4 to register with several securities exchanges or "self-regulating organizations" (SROs), including NASD and NYSE. The Form U-4s appellants signed contain a standard arbitration clause in which appellants agreed "to arbitrate any dispute, claim or controversy that may arise between [the applicant] and [his] firm . . . that is required to be arbitrated under the rules, constitutions, or by-laws of the [relevant SRO]."

In January 1998, CSFB introduced a new Employee Dispute Resolution Program (EDRP) which, along with an update notice, was incorporated by specific reference in appellants' 2000 and 2001 employment agreements and which allegedly covered all employment-related claims employees might have against CSFB, except for workers' compensation and unemployment

benefits, and constituted "the only means" by which employees could seek to resolve such claims. The EDRP consists of a three-step process which, if necessary, culminates in arbitration before one of three designated arbitration service providers. The EDRP expressly excepts from its arbitration provision, however, any registered representative who is subject to a legal requirement to arbitrate his employment-related disputes in a particular forum to the exclusion of other fora.

Appellants' employment was terminated in March 2002. A dispute arose between the parties as to certain compensation appellants are allegedly owed pursuant to their employment agreements. Appellants initiated proceedings pursuant to the EDRP, and the first-step internal grievance and the second-step mediation proved unsuccessful; in fact the latter was never completed. Appellants filed for arbitration, but instead of filing before one of the EDRP providers, they demanded arbitration by the NYSE pursuant to Form U-4. CSFB filed a demand for arbitration before JAMS, one of the three providers named in the EDRP, and also commenced this action, pursuant to CPLR 7503 (b), seeking to stay the NYSE arbitration on grounds that a valid agreement to arbitrate had not been complied with in that the EDRP arbitration provisions supersede those contained in the Form U-4, and prohibit appellants from seeking arbitration under the latter.

Supreme Court, in granting CSFB's petition, held that NYSE rule 347, which provides for arbitration of disputes concerning the employment or termination of employment of a registered representative with an NYSE member, assumes that no other arbitration agreement exists and is limited to merely requiring the parties to arbitrate, without imposing a particular forum. The court further reasoned that Form U-4, because it provides for arbitration before any of several SROs, cannot be read to limit the arbitration forum to the NYSE. Thus, there was nothing to prevent the parties from agreeing to the EDRP arbitration procedure which would then supersede the broader Form U-4 arbitration provisions.

Supreme Court erred in staying arbitration and directing the parties to proceed in accordance with the EDRP instead of Form U-4 and NYSE rule 347. The EDRP, adopted subsequent to appellants' execution of Form U-4, expressly provides an exception from its provisions:

"[i]f a registered representative [appellants] is

subject to a legal requirement that [he] arbitrate Employment-Related Claims pursuant to particular rules or in a particular forum (*for example, at or pursuant to the rules of a stock exchange*), to the exclusion of other forums and rules, that requirement will prevail over the arbitration procedures described herein" (emphasis added).

The facts before us clearly delineate the very circumstances this exception sets forth.

Respondent CSFB's contention that Form U-4 and NYSE rule 347 simply require that the parties arbitrate employment disputes, but do not require that they do so in any particular forum, is erroneous. Form U-4, which functions as an application for registry as well as an agreement between the applicant and the industry, provides for arbitration before any of several stock exchanges which use the form, in accordance with the relevant exchange's rules. Respondent, though not a party to the Form U-4 agreement (*Hamilton v Cantor Fitzgerald Sec.*, 265 AD2d 526 [1999]), is undisputably a member of the NYSE and is subject to that exchange's Constitution article XI (§ 1) and rule 347:

> "Sec. 1. Controversies Arbitrated. Any controversy between parties who are members, allied members or member organizations and any controversy between a member, allied member or member organization and any other person arising out of the business of such member . . . shall at the instance of any such party, be submitted for arbitration in accordance with the provisions of this Constitution and such rules as the Board may from time to time adopt."

> "Rule 347 . . . any controversy between a registered representative and any member or member organization arising out of the employment or termination of employment of such registered representative by and with such member or member organization *shall be settled by arbitration*, at the instance of any such party, in accordance with the arbitration procedure prescribed elsewhere in these rules." (Emphasis added.)

Furthermore, respondent ignores New York case law holding that the employment agreements cannot supersede the previously executed Form U-4 agreements between appellants and

the SROs they designate therein (*see e.g. Hamilton v Cantor Fitzgerald Sec., supra*; *O'Donnell v First Invs. Corp.*, 872 F Supp 1274 [1995]; *Harrison v Salomon Bros.*, 156 Misc 2d 341 [1992]). Essentially, the obligation here to arbitrate in the NYSE forum is imposed on each party due to its affiliation with and assent to the rules of the NYSE (*cf. Hamilton*, 265 AD2d at 527; *Harriman Group v Napolitano*, 213 AD2d 159, 160-162 [1995] [cases involving equivalent NASD arbitration rules]).

Accordingly, the judgment of the Supreme Court, New York County (Nicholas Figueroa, J.), entered March 19, 2003, which granted the petition of Credit Suisse First Boston pursuant to CPLR 7503 (b), staying arbitration proceedings before the New York Stock Exchange and directing the parties to proceed before JAMS, should be reversed, on the law, with costs, the petition denied and the parties directed to proceed to arbitration before the New York Stock Exchange.

ELLERIN, J.P., LERNER, FRIEDMAN and GONZALEZ, JJ., concur.

Judgment, Supreme Court, New York County, entered March 19, 2003, reversed, on the law, with costs, the petition denied and the parties directed to proceed to arbitration before the New York Stock Exchange.