**CREDIT SUISSE FIRST BOSTON, LLC; Casa De Bolsa Credit Suisse First Boston (Mexico), S.A. De C.V.; and Credit Suisse First Boston Zurich Switzerland, Oficina De Representacion En Mexico, Plaintiffs,**

v.

**Jorge David Gonzalez PADILLA and Franciso Isaac Cueto Salmona Defendants.**

**No. 04 Civ. 4044SHS.**

United States District Court, S.D. New York.

July 12, 2004.

Michael Barry Carlinsky, Kevin Samuel Reed, Quinn Emanuel Urquhart Oliver & Hedges, LLP, New York, NY, for Casa De Bolsa Credit Suisse First Boston, (Mexico), S.A. De C.V.

David M. Marek, Liddle and Robinson, LLP, New York, NY, for Francisco Isaac Cueto Salmona.

## OPINION & ORDER

STEIN, District Judge.

This action arises out of an employment dispute between Credit Suisse First Boston and affiliated entities (collectively "CSFB" or plaintiffs) and defendants Jorge David Gonzalez Padilla ("Gonzalez") and Francisco Isaac Cueto Salmona ("Cueto"), both of whom are citizens and residents of Mexico and former CSFB employees. Specifically, plaintiffs petition this Court to compel defendants to arbitrate a dispute between the parties in a forum authorized by the CSFB Employment Dispute Resolution Program ("the EDRP") and to bar defendants from pursuing arbitration in any forum not authorized by the EDRP. Messrs Gonzalez and Cueto have opposed the petition and have cross-moved to dismiss it.

For the reasons set forth below, plaintiffs' motion is granted.

## BACKGROUND

The following facts are as set forth in the submissions of the parties and are uncontroverted. In October 2000, Gonzalez, upon joining CSFB, executed an "Agreement to Use Employment Dispute Resolution Program Procedures" in which he agreed that he would "submit all claims [he] may from time to time have against [CSFB] ... that relate to or arise from [his] employment or termination ... to and in accordance with the dispute resolution procedures under the [EDRP]." (Compl.Ex. A). The EDRP sets forth a three step procedure for resolving employment-related disputes: first, an internal grievance procedure, then external mediation, and third, if the dispute has not been resolved, it is to be submitted to "final, binding arbitration." (EDRP submitted as Ex. B to Compl.). If an arbitrator is needed, the dispute is to be submitted to the American Arbitration Association ("AAA"), the CPR Institute for Dispute Resolution, or JAMS for resolution by a single arbitrator. (EDRP submitted as Ex. B to Compl.). Though Gonzalez was employed seriatim by several CSFB entities, he continued to be a CSFB employee and remained bound by the EDRP throughout the relevant time period. (Compl. ¶ 14; Defs' Memo Supp. Mot. Dismiss and Opp. to Pls' Order to Show Cause

4–5). Pursuant to the EDRP, "the party that first requests an arbitration" makes the choice of either the AAA, CPR, or JAMS to provide the arbitration services.

In March 2000, Cueto joined CSFB, LLC in Mexico City and also allegedly executed an agreement binding him to abide by the EDRP.[1] (Compl. ¶ 15). Cueto was reassigned later to CSFB Mexico, and on February 11, 2002, he executed another employment agreement governed by Mexican law that provides that each party "irrevocably submit[s], for the purposes of any conflict arising from this agreement, to the jurisdiction of the Labor Courts located in Mexico City...." (Employment Agreement dated Feb. 11, 2002, appended to the Order to Show Cause Ex. G). The term "Labor Courts" refers to Boards of Conciliation and Arbitration—known as the BCA—that are administrative, not judicial, bodies in the Executive Branch of the Mexican Government and provide arbitration services. (Compl. ¶ 17; Navarro Decl. ¶ 4). Though reassigned in June 2002, Cueto maintained the same terms of employment as during his prior position. (Reassignment letter appended to Compl. Ex. C; Defs' Memo Supp. Mot. Dismiss and Opp. to Pls' Order to Show Cause 5–6).

Both Gonzalez and Cueto resigned from CSFB in March 2003 and instituted proceedings in the BCA the following month against CSFB alleging that CSFB had, among other actions, improperly reduced their compensation and had defamed them. (Order to Show Cause Ex. A). In addition to the proceedings filed in the BCA, Gonzalez and Cueto jointly filed a demand for arbitration against CSFB in the Department of Arbitration of the New York Stock Exchange in February 2004 alleging that CSFB had defamed them to their employer. (Order to Show Cause Ex. A).

Three months later, CSFB initiated an arbitration proceeding against Gonzalez before JAMS in accordance with the EDRP seeking a declaratory judgment that it is not liable for the claims Gonzalez asserted against it at the NYSE and the BCA. (Order to Show Cause Ex. B). From this Court, CSFB seeks an order compelling Gonzalez to arbitrate his claims not in the NYSE and in the BCA, but before a JAMS arbitrator. (Compl. Request for Relief). CSFB also seeks an order compelling Cueto to arbitrate the claims he asserted in the NYSE before the BCA only. (Id.).

## DISCUSSION

### I. *This Court Has Subject Matter Jurisdiction Over This Action*

CSFB seeks an order compelling arbitration pursuant to the Federal Arbitration Act ("FAA"). 9 U.S.C. §§ 1–14, 201–208, 301–307. However, it is well settled that that act is not an independent grant of subject matter jurisdiction to the federal courts. In order for a federal court to hear a petition pursuant to the FAA, there must be an independent basis of subject matter jurisdiction. *See Perpetual Securities, Inc. v. Tang*, 290 F.3d 132, 135–36 (2d Cir.2002); *Greenberg v. Bear, Stearns & Co.*, 220 F.3d 22, 25–29 (2d Cir.2000). Defendants claim no such independent basis exists here; plaintiffs respond that because this petition "falls under" the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("the Convention"), subject matter jurisdiction is present. Specifically, 9

---

1. Though this Court finds no evidence in the record that Cueto became bound by the EDRP, Cueto did "agree[] and accept[]" a letter from CSFB setting forth the terms and conditions of his employment. That agreement, discussed next, is the only controlling agreement in the record.

U.S.C. § 203 provides that "[a]n action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States. The district courts of the United States ... shall have original jurisdiction over such an action or proceeding, regardless of the amount in controversy." The question therefore is, does this dispute "fall[ ] under" the Convention?

■ The U.S. Court of Appeals for the Second Circuit has set forth four basic requirements to answer that question as follows:

(1) there must be a written agreement; (2) it must provide for arbitration in the territory of a signatory of the convention; (3) the subject matter must be commercial; and (4) it cannot be entirely domestic in scope.

*Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc.,* 198 F.3d 88, 92 (2d Cir.1999) (citing 9 U.S.C. § 202); *see also* 9 U.S.C. § 201.

■ Defendants do not disagree that the EDRP in the case of Gonzalez and the February 11, 2002 Employment Agreement in the case of Cueto meet all four of those requirements: each defendant has a written agreement with CSFB agreeing to resolve any employment disputes pursuant to a specific protocol which provides for arbitration in the territory of a Convention signatory,[2] the employment dispute is commercial in nature, and is not entirely domestic since the defendants were employed in Mexico.

Instead, defendants make two other points. First, they cite *Credit Suisse First Boston LLC v. Chai,* 317 F.Supp.2d 380 (S.D.N.Y.2004) for the proposition that this Court lacks subject matter jurisdiction. However, that case is inapposite.

*Chai* involved a straightforward state contract claim without any independent basis for federal subject matter jurisdiction. The Convention was not involved in that action. This matter, unlike *Chai,* brings this Court to a different jurisdictional conclusion because it "falls under" the Convention and therefore, according to the words of 9 U.S.C. § 203, this Court "shall have original jurisdiction over such an action." 9 U.S.C. § 203; *see also Smith/Enron,* 198 F.3d at 92.

Second, defendants engage in a detailed analysis of whether this action "arises under" the Convention by examining federal case law that discusses that phrase in the context of 28 U.S.C. § 1331, which provides federal courts with subject matter jurisdiction for "all civil actions arising under the Constitution, laws, or treaties of the United States." That bootless detour ignores the specific provisions of the FAA that pertain to this petition, *see* 9 U.S.C. §§ 201–207, as well as Second Circuit case law, which directly sets forth the proper test for determining whether an action "arise[s] under" the Convention. *See Smith/Enron,* 198 F.3d at 92; *Sarhank Group v. Oracle Corporation,* No. 01 Civ. 1285 (DAB), 2002 WL 31268635, at *2 (S.D.N.Y. Oct. 9, 2002). That test is set forth above, and this action satisfies it, thereby providing this Court with subject matter jurisdiction.

## II. The Employment Dispute Resolution Program and the February 11, 2002 Employment Agreement Will Be Enforced

Courts have "long recognized and enforced a 'liberal federal policy favoring arbitration agreements.'" *Howsam v. Dean Witter Reynolds, Inc.,* 537 U.S. 79, 83, 123

---

**2.** Both the United States and Mexico are signatories to the Convention. *See* List of Signatories at the end of the Convention, Historical Notes, appended to 9 U.S.C.A. § 201.

S.Ct. 588, 154 L.Ed.2d 491 (2002) (citing *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)). Consistent with that policy, the United States became a signatory to the Convention, 21 U.S.T. 2517, the enabling legislation of which has charged the federal courts with its enforcement. *See* 9 U.S.C. § 201 ("The Convention ... shall be enforced in United States courts in accordance with this chapter."). Moreover, pursuant to the FAA, this Court "may direct that arbitration be held in accordance with the agreement at any place therein provided for, whether that place is within or without the United States." 9 U.S.C. § 206.

As set forth above, CSFB petitions this Court to enforce the EDRP as against Gonzalez. The EDRP sets forth its applicability and carves out one exception:

> An employee who is (or is required to be) a registered representative shall be subject to the arbitration provisions of the [EDRP] with regard to an Employment–Related Claim asserted by him or her except to the extent he or she is *legally required* to arbitrate such Employment–Related Claim pursuant to particular rules or in a particular forum (for example, pursuant to the rules of or at a stock exchange or the National Association of Securities Dealers) to the exclusion of all other rules and forums. If such a requirement applies, it will take precedence over the arbitration procedure described in Step Three of the [EDRP].

(Order to Show Cause Ex. E) (emphasis added).

In addition, Gonzalez was a registered representative of the New York Stock Ex-change ("the Exchange") which required him to sign an agreement titled "Form U–4" which requires him to arbitrate any employment related disputes under the rules of the Exchange. Because Cueto was not a registered representative and not a signatory or the Form U–4 or to the EDRP according to the record before this Court, plaintiffs' motion as to each defendant is addressed separately.

### A. Gonzalez Is Bound By The EDRP

■ Gonzalez contends that he is "legally required" by the Exchange's rules to arbitrate his dispute at the Exchange and by the very terms of the EDRP, set forth above, the Exchange rules "will take precedence over the arbitration procedure" of the EDRP. Gonzalez relies heavily upon *Credit Suisse First Boston v. Pitofsky et al.,* 2 A.D.3d 6, 768 N.Y.S.2d 436 (1st Dept. 2003),[3] but that is a New York State Appellate Division decision that relies on New York law. Here, federal law, not New York law, is controlling. *See Smith/Enron* 198 F.3d at 96 (The court rejected the application of New York law and wrote that when a federal court exercises jurisdiction pursuant to Chapter Two of the Federal Arbitration Act, it has "compelling reasons to apply federal law, which is already well-developed, to the question of whether an agreement to arbitrate is enforceable.") (citing cases).

Rule 347 of the Exchange details when registered representatives are obligated to arbitrate before the Exchange. The Securities and Exchange Commission has explained that "Rule 347 requires arbitration of claims 'at the instance' of either party, and therefore may be waived, allowing the entire case to be heard in court." Self

---

**3.** Moreover, the New York Court of Appeals recently granted CSFB's motion for leave to appeal the *Pitofsky* decision to it and also stayed that portion of the Appellate Division order that "direct[ed] the parties to proceed to arbitration." *Credit Suisse First Boston v. Pitofsky et al.,* 2004 WL 1493926 (N.Y. June 29, 2004).

Regulatory Organizations; Order Approving Proposed Rule Change by the New York Stock Exchange, Inc. Relating to Arbitration Rules, 1998 WL 907943 (S.E.C. Release No. 40858). Accordingly, neither party to this action becomes "legally required," pursuant to the EDRP, to arbitrate within the Exchange unless and until one party initiates such a proceeding.

Because Gonzalez explicitly agreed in the EDRP not to demand arbitration before the Exchange unless he were legally required to do so, his very act of seeking arbitration before the Exchange despite being free of any legal requirement to do so was *in the first place* a violation of the EDRP and nothing more than an attempt to bootstrap his way into meeting the "legally required" exception to the EDRP. The parties agreed to arbitrate pursuant to the EDRP unless "legally required" to arbitrate elsewhere; because neither party's circumstance met the EDRP exception, Gonzalez may not pursue his claims in the Exchange. *See Merrill Lynch, Pierce, Fenner, & Smith, Inc. v. Georgiadis*, 903 F.2d 109 (2d Cir.1990) ("[T]he arbitration provision of [another national exchange] may be superceded by a more specific customer agreement of the parties." The court later continued: "Where, as here, the parties have agreed explicitly to settle their disputes only before particular arbitration fora, that agreement controls."); *see also Chanchani v. Salomon/Smith Barney, Inc.*, No. 99 Civ. 9219 RCC, 2001 WL 204214, at *5 (S.D.N.Y. Mar.1, 2001) ("The terms of the U–4s and the NYSE rules in no way prohibit member organizations from entering into separate, private arbitration agreements with their employees.").

## C. *Cueto Is Bound By The February 11, 2002 Employment Agreement*

The analysis of Cueto's claim yields the same result. Though not a registered representative and thus not subject to the Exchange rules, Cueto is bound by the arbitration clause of his February 11, 2002 Employment Agreement with CSFB. Accordingly, he too must arbitrate in the forum agreed upon in that agreement—the BCA—and must cease arbitration before the Exchange.

## CONCLUSION

For the reasons set forth above, the petition is granted; defendants' cross-motion to dismiss the petition is denied. The Exchange arbitration proceedings as to Gonzalez and Cueto are enjoined. Gonzalez is directed to arbitrate his claims against plaintiffs before an arbitrator in one of the fora set forth in the EDRP. Cueto is directed to arbitrate his claims against plaintiffs in the BCA.