SICOR SECURITIES, INC., f.k.a. Tower Equities, Appellant,

v.

ALBERT, Appellee.

[Cite as *Sicor Secs., Inc. v. Albert,* 166 Ohio App.3d 419, 2006-Ohio-995.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 21001.

Decided March 3, 2006.

William B. Fecher, for appellant.

Jonathan Hollingsworth, for appellee.

BROGAN, Judge.

{¶ 1} Sicor Securities, Inc., appeals from the trial court's decision and entry denying preliminary or permanent injunctive relief to stop an arbitration initiated by appellee, Kenneth W. Albert, before the National Association of Securities Dealers, Inc. ("NASD").

{¶ 2} In its sole assignment of error, Sicor contends that the trial court erred in refusing to enforce provisions in its independent-contractor and investment-advisor representative agreements with Albert that required arbitration of disputes before the American Arbitration Association ("AAA") in Montgomery County rather than before the NASD. The trial court concluded that the foregoing arbitration provisions were unenforceable because NASD rules and regulations mandated arbitration before that body rather than in another arbitral forum.

{¶ 3} The present dispute stems from $57,532.83 in compensation that Sicor allegedly failed to pay Albert following his termination of the parties' business relationship. Sicor is an investment broker/dealer firm and, as such, is a NASD member. Albert is a registered representative of NASD, which is a "nonprofit, self-regulatory organization registered with the Securities and Exchange Commission as a national securities association." [1]

{¶ 4} In 1997, Albert entered into an independent-contractor agreement with Sicor. Thereafter, in 2002, he entered into a new independent-contractor agreement and an investment-advisor representative agreement with Sicor. These agreements included terms requiring the resolution of disputes through AAA

---

1. *MM & S Financial, Inc. v. Natl. Assn. of Securities Dealers, Inc.* (C.A.8, 2004), 364 F.3d 908, 909.

arbitration in Montgomery County. During his business relationship with Sicor, Albert also was required to sign and submit to the NASD several forms entitled "Uniform Applications for Securities Industry Registration or Transfer." These forms, which are known in the industry as "U–4" forms, contained language requiring Albert to arbitrate any dispute between himself and Sicor "that is required to be arbitrated under the rules, constitutions, or by-laws of [NASD]." In turn, Rule 10201 of the NASD Code of Arbitration Procedure, which is entitled "Required Submission," states:

{¶ 5} "(a) Except as provided in paragraph (b) or Rule 10216, a dispute, claim, or controversy eligible for submission under the Rule 10100 Series between or among members and/or associated persons, and/or certain others, arising in connection with the business of such member(s) or in connection with the activities of such associated person(s), or arising out of the employment or termination of employment of such associated person(s) with such member, shall be arbitrated under this Code at the instance of:

{¶ 6} "1.   a member against another member;

{¶ 7} "2.   a member against a person associated with a member or a person associated with a member against a member;  and

{¶ 8} "3.   a person associated with a member against a person associated with a member."

{¶ 9} Finally, NASD Code of Arbitration Procedure Rule IM–10100(a) provides: "It may be deemed conduct inconsistent with just and equitable principles of trade and a violation of Rule 2110 for a member or a person associated with a member to * * * fail to submit a dispute for arbitration under the NASD Code of Arbitration Procedure as required by that Code." Rule IM–10100 also states that "[a]ction by members requiring associated persons to waive the arbitration of disputes contrary to the provisions of the Code of Arbitration Procedure shall constitute conduct that is inconsistent with just and equitable principles of trade and a violation of Rule 2110."

{¶ 10} After reviewing Albert's written agreements with Sicor, the U–4 forms, and the NASD provisions cited above, the trial court determined that the parties' contractual agreement to engage in AAA arbitration in lieu of NASD arbitration was invalid. In support of its decision, the trial court reasoned:

{¶ 11} "The NASD has specifically provided that its members must arbitrate any claim or dispute before the NASD. Further, the NASD has specifically stated that it is a violation of NASD Rules of Fair Practice for a member firm to require its employees/independent contractor representatives to waive the NASD arbitration provision. The Court is further persuaded by Albert's argument that the public interest would not be served by permitting NASD member firms and

representatives to waive NASD arbitration and settle disputes in another forum. The public relies on the NASD for information on brokerage firms and their brokers. Permitting member firms and representatives to forum shop to settle disputes would prevent the NASD and the public customers from having full knowledge of the business practices of brokerage firms and their brokers. The Court finds that Sicor cannot, by virtue of the IC and IAR Agreements, cause Albert to waive the NASD Code arbitration provisions. Additionally, the Court finds that the arbitration provisions contained in the IC and IAR Agreements are unenforceable."

{¶ 12} On appeal, Sicor asserts that nothing in the U–4 forms or the NASD provisions quoted above compelled the parties to participate in NASD arbitration instead of AAA arbitration. Thus, Sicor contends that the language in Albert's independent-contractor and investment-advisor representative agreements providing for AAA arbitration of disputes was valid and enforceable. Sicor also challenges the trial court's finding that allowing AAA arbitration in the present case would violate the public interest. For his part, Albert contends that NASD rules do mandate arbitration before that self-regulatory body. Albert also argues that NASD rules prohibit parties from agreeing to forgo NASD arbitration and to participate in arbitration before some other organization. Finally, Albert reiterates the trial court's public-interest concerns and argues that requiring NASD arbitration is in the public interest.

{¶ 13} Upon review, we find Sicor's arguments to be persuasive. The U–4 forms signed by Albert provide:

{¶ 14} "5. I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the [NASD] as may be amended from time to time * * *."

{¶ 15} In our view, the foregoing language is susceptible of two interpretations. First, it could mean that Albert and Sicor agree to arbitrate their dispute before the NASD. Second, it could mean that Albert and Sicor agree to arbitrate any dispute that the NASD rules require to be arbitrated. The former reading of the provision supports Albert's claim that NASD arbitration has been agreed upon to the exclusion of AAA arbitration. The latter reading, however, supports Sicor's position that the U–4 form merely constitutes an agreement to arbitrate without mandating a particular arbitral forum. We find this reading of the U–4 form to be the most reasonable and natural one. It also is consistent with the interpretation adopted by a federal district court recently in *Katz v. Round Hill Securities, Inc.* (N.D.Cal.2005), case No. C 05–1453 PJH, 2005 WL 2257527 at *6 ("the Form U–4 agreement does not state that any dispute between NASD members must be arbitrated under the auspices of the NASD, but rather

simply that the person signing agrees that he or she will arbitrate any dispute that the NASD rules require to be arbitrated"); see, also, *Chanchani v. Salomon/Smith Barney, Inc.* (S.D.N.Y.2001), case No. 99 CV 9219 RCC, 2001 WL 204214, at *5 ("[T]he terms of the U–4s * * * in no way prohibit member organizations from entering into separate, private arbitration agreements with their employees"). As a result, we conclude that the U–4 forms did not compel Albert to arbitrate his claim against Sicor before the NASD.

{¶ 16} We turn next to Rule 10201 of the NASD Code of Arbitration Procedure which states:

{¶ 17} "(a) * * * [A] dispute, claim, or controversy eligible for submission * * * between or among members and/or associated persons, and/or certain others, arising in connection with the business of such member(s) or in connection with the activities of such associated person(s), or arising out of the employment or termination of employment of such associated person(s) with such member, shall be arbitrated under this Code at the instance of:

{¶ 18} "1. a member against another member;

{¶ 19} "2. a member against a person associated with a member or a person associated with a member against a member; and

{¶ 20} "3. a person associated with a member against a person associated with a member."

{¶ 21} The parties do not dispute that the present controversy over Albert's entitlement to additional compensation of $57,532.83 is eligible to be submitted for NASD arbitration. The unpaid-compensation claim also involves an NASD member, Sicor, and an associated person, Albert. In addition, the controversy arises out of Sicor's business and Albert's activities on behalf of the business. Therefore, Rule 10201(a)(2) provides that the controversy shall be arbitrated under the NASD Code "at the instance of" Albert (a person associated with a member) against Sicor (a member).

{¶ 22} Although neither party has cited any case law directly on point, the United States District Court for the Northern District of California recently interpreted Rule 10201 in *Katz v. Round Hill Securities,* supra. At issue there, as here, was whether the U–4 forms and NASD rules mandated NASD arbitration, as opposed to AAA arbitration, of a dispute between Round Hill, a NASD-registered broker/dealer, and Stanley and Edwin Katz, who were NASD-registered representatives and independent contractors for Round Hill. In accordance with the Katz brothers' written employment agreement with Round Hill, they elected AAA arbitration to settle a compensation dispute. After the Katz brothers obtained an arbitration award, they sought to have it confirmed. In response, Round Hill sought to vacate it on the basis that the U–4 forms and

NASD rules mandated arbitration solely before the NASD. Upon review, the trial court rejected Round Hill's arguments and confirmed the award, reasoning in part as follows:

{¶ 23} "The court finds that the NASD rules on which respondents rely are ambiguous and far from clear. The court does not agree with respondents that the language in Rule 10201—'shall be arbitrated under the Code, at the instance of' a member or associated person—simply means 'shall be arbitrated under the Code.' The word 'instance' as used in the phrase 'at the instance of' means 'urgent solicitation or insistence.' *Black's Law Dictionary* (7th Ed.1999) at 800; see also Bryan A. Garner, *A Dictionary of Modern Legal Usage* (2nd Ed., Oxford Press 2001), at 454–55. In the court's view, the requirement that a dispute 'shall be arbitrated under the Code at the instance of' a member or associated person appears to be a requirement that the dispute be arbitrated under the NASD Code if a request to arbitrate under the Code is made by a member or associated person. At a bare minimum, the provision is ambiguous." *Katz v. Round Hill,* supra, 2005 WL 2257527 at *6.

{¶ 24} The *Katz* court then found nothing in NASD Rule 10201 or elsewhere in the NASD Code that would preclude the parties from agreeing to resolve their dispute through AAA arbitration. The *Katz* court's analysis is consistent with federal case law interpreting analogous language in New York Stock Exchange Rule 347, which requires arbitration under the NYSE rules "at the instance of" a member firm or a registered representative of a member firm. See, e.g., *Credit Suisse First Boston v. Padilla* (S.D.N.Y.2004), 326 F.Supp.2d 508, 512–513 (recognizing that an employee's right to demand NYSE arbitration under NYSE Rule 347 was elective and could be waived by entering into a contrary agreement with an employer); *Credit Suisse First Boston v. Groves* (S.D.N.Y.2004), 333 F.Supp.2d 229, 232 ("The language of Rule 347 does not bind Groves to a NYSE arbitration, but merely states that a NYSE arbitration will be employed 'at the instance of any such party.' * * * When Groves became a party to the [employer's own dispute resolution agreement] which provides for arbitration before a non-NYSE forum, he waived the right to elect a NYSE forum"); see also *Merrill Lynch v. Georgiadis* (2nd Cir.1990), 903 F.2d 109, 112–113 ("We hold that the arbitration provision of the AMEX Constitution may be superseded by a more specific customer agreement of the parties. * * * Where, as here, the parties have agreed explicitly to settle their disputes only before particular arbitration fora, that agreement controls"); *Roney & Co. v. Goren* (C.A.6, 1989), 875 F.2d 1218, 1222 ("To initiate arbitration proceedings under the NASD Arbitration Code, a member, a person associated with a member, or a customer must submit a request for NASD arbitration. * * * If the parties agree to

submit their dispute to another [self-regulatory-organization] for resolution, NASD arbitration is not implicated").

{¶ 25} Like the federal district court in *Katz,* and the courts interpreting similar language in the NYSE rules, we conclude that NASD Rule 10201's requirement of arbitration under the NASD Code "at the instance of" a person associated with a member did not prohibit Albert and Sicor from agreeing to resolve their dispute in another arbitral forum. By signing independent-contractor and investment-advisor representative agreements with Sicor, Albert plainly waived his right to elect NASD arbitration under Rule 10201. This is so because the independent-contractor and investment-advisor representative agreements contained clear language obligating the parties to resolve their disputes through AAA arbitration.

{¶ 26} The next issue is whether anything in the NASD rules prohibited the waiver of Albert's right to elect NASD arbitration. On this issue, Albert cites NASD Rule IM–10100(a), which provides: "It may be deemed conduct inconsistent with just and equitable principles of trade and a violation of Rule 2110 for a member or a person associated with a member to * * * fail to submit a dispute for arbitration under the NASD Code of Arbitration Procedure as required by that Code." Although this provision certainly prohibits a member such as Sicor from failing to submit a dispute for NASD arbitration *when required by the NASD Code,* it fails to address the threshold question, namely whether NASD arbitration *was required* in this case. Nor does this portion of Rule IM–10100 in any way restrict the ability of an associated person such as Albert to waive NASD arbitration and commit to arbitration in another forum. Therefore, based on the reasoning set forth above, we conclude that neither the U–4 forms nor the NASD rules required Albert and Sicor to engage in NASD arbitration or precluded Albert from waiving his right to do so. As a result, Sicor did not violate Rule IM–10100 by seeking injunctive relief rather than participating in the NASD arbitration commenced by Albert.

{¶ 27} Albert also relies on language in Rule IM–10100 providing that "[a]ction by members requiring associated persons to waive the arbitration of disputes contrary to the provisions of the Code of Arbitration Procedure shall constitute conduct that is inconsistent with just and equitable principles of trade and a violation of Rule 2110." [2]

{¶ 28} Unfortunately, neither party has cited legal authority interpreting the foregoing language, and our own research has proven unfruitful. In any event,

---

**2.** Rule 2110, which is referred to in Rule IM–10100, states: "A member, in the conduct of his business, shall observe high standards of commercial honor and just and equitable principles of trade."

Albert contends that the provision prohibited Sicor from requiring him to sign the independent-contractor and investment-advisor representative agreements that obligated the parties to resolve their disputes through AAA arbitration. On the other hand, Sicor claims that the provision prohibits NASD member firms from requiring associated persons to waive the arbitration of disputes altogether when the NASD Code provides for arbitration of them.

{¶ 29} Once again, we conclude that Sicor's interpretation of the provision is the most reasonable one. This portion of Rule IM–10100 merely prohibits Sicor from requiring Albert "to waive the arbitration of disputes contrary to the provisions of the Code." In our view, this provision means that Sicor cannot compel Albert to forgo arbitration when the NASD Code authorizes it. We do not read the provision as prohibiting Sicor from presenting Albert with an employment agreement that provides for AAA arbitration in lieu of NASD arbitration. Indeed, another part of Rule IM–10100 reveals that the NASD generally has no qualms about parties entering into private agreements to arbitrate in a non-NASD forum. See Rule IM–10100(d) (declaring it a potential violation for a member firm or a person associated with a member "to fail to honor an award * * * obtained in connection with an arbitration submitted for disposition * * * pursuant to the rules applicable to the arbitration of disputes before the American Arbitration Association or other dispute resolution forum selected by the parties").

{¶ 30} In support of his contrary interpretation of Rule IM–10100, Albert draws an analogy to *Thomas James Assoc., Inc. v. Jameson* (C.A.2, 1996), 102 F.3d 60. There the Second Circuit Court of Appeals found that it would violate public policy to allow an NASD member firm to require its associated persons to waive their right to arbitrate employment disputes. Id. at 66–67. Albert's reliance on *Jameson* is misplaced, however, because it involved a member firm's attempt to prevent associated persons from arbitrating employment disputes in any forum. In the present case, unlike *Jameson*, the independent-contractor and investment-advisor representative agreements permitted arbitration but provided for it to take place in an AAA proceeding. The federal district court recognized this distinction in *Groves*, supra, and observed that "nothing in *Jameson* or in the law extends the public policy favoring arbitration to the point of favoring a particular arbitral forum, or one forum over another. Public policy has no concern with whether any particular arbitration is conducted by the NYSE, or by [another arbitration provider], or by some other facility such as the American Arbitration Association. That is a matter left to individual agreements. * * * There is no reason why a selection of one arbitral forum cannot be waived, and another substituted." *Groves*, 333 F.Supp.2d at 232. We find this reasoning to be equally applicable herein.

■ {¶ 31} We also reject Albert's argument, and the trial court's finding, that allowing AAA arbitration would not be in the public interest. As we have explained above, NASD Rule 10201 does not require arbitration in all cases. Rather, it provides for mandatory arbitration only "at the instance of" a member firm or an associated person. Given that a member firm or associated person may forgo arbitration altogether by failing to demand it, we do not see how the parties' agreement to engage in AAA arbitration rather than NASD arbitration violates the public interest. The trial court expressed concern that allowing Albert and Sicor to resolve their dispute through AAA arbitration would shield the matter from public view. NASD Rule 3070, however, expressly obligates member firms to report non-NASD arbitrations.

■ {¶ 32} Finally, we find no merit in Albert's assertion that his claim against Sicor for unpaid compensation of $57,532.83 is not subject to AAA arbitration under the terms of his independent-contractor and investment-advisor representative agreements. In support of his argument, which has been raised in a footnote, Albert states:

{¶ 33} "Paragraph 27 of the 2002 Agreements expressly exclude[s] from AAA arbitration any disputes arising out of paragraph 20 of the Agreements. *See* Exhibits A & B to Sicor's Complaint. Paragraph 20 of the Agreements, entitled 'Termination,' concerns the termination of the Agreements by either Sicor or Mr. Albert. Mr. Albert's claim for his unpaid compensations directly arises out of his termination of his affiliation with Sicor, and thus, by the 2002 Agreements' own terms, qualifies for exclusion from arbitration before the AAA."

{¶ 34} Upon review, we are unpersuaded that Albert's claim for unpaid compensation is excluded from AAA arbitration. Paragraph 20 of the 2002 independent-contractor and investment-advisor representative agreements between Albert and Sicor states: "With or without cause, and except as provided above, the Firm or Representative may terminate this Agreement, at any time, upon two (2) weeks written notice." In turn, paragraph 27 states: "Any controversy or claim (with the exception of claims arising out of paragraphs 20 and 21) arising out of or relating to this Agreement, or the breach thereof, shall be settled in arbitration in the County of Montgomery, State of Ohio, in accordance with the rules then comprising the American Arbitration Association ('AAA') Procedures for Small Disputes."

{¶ 35} Albert has failed to demonstrate, however, that his claim for unpaid compensation "arises out of" his termination of the independent-contractor and investment-advisor representative agreements. We reach this conclusion based on (1) his failure to present any argument on the issue and (2) our review of the claim he filed in the pending NASD arbitration. In his arbitration filing, Albert claimed that he terminated his relationship with Sicor in part due to dissatisfac-

tion with its compensation policies, which permitted Sicor to withhold payment to him until his commissions no longer were subject to charge back or recapture by the companies whose products he sold. Because of his "frustration" with this payment scheme, Albert terminated his independent-contractor and investment-advisor representative agreements with Sicor. At the time of termination, he contends, Sicor owed him $57,532.83, which the company allegedly refused to pay because potential charge backs still existed.

{¶ 36} Setting aside the merits of Albert's claim, an issue on which we express no opinion, it does not arise out of his termination. Sicor's policy of withholding commissions due to possible charge backs existed without regard to Albert's termination. Indeed, by Albert's own admission, his dissatisfaction with Sicor's compensation scheme is one factor that prompted him to sever ties with the company. When Albert did so, Sicor allegedly owed him unpaid commissions. But it is not apparent to us that his claim for the unpaid debt in any way arises out of his termination of the parties' agreements. Absent argument from Albert on this point, we do not find that his claim for unpaid compensation is precluded from AAA arbitration by paragraphs 20 and 27 of the parties' agreements.

{¶ 37} Based on the reasoning set forth above, we hereby sustain Sicor's assignment of error and hold that the trial court erred in finding the AAA arbitration provision in the parties' independent-contractor and investment-advisor representative agreements to be unenforceable. The trial court's judgment is reversed, and the cause is remanded for further proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

FAIN and VALEN, JJ., concur.

ANTHONY VALEN, J., retired of the Twelfth Appellate District, sitting by assignment of the Chief Justice of the Supreme Court of Ohio.