[824 NE2d 929, 791 NYS2d 489]

CREDIT SUISSE FIRST BOSTON CORPORATION, Appellant, v WIL-
LIAM PITOFSKY et al., Respondents.

Argued January 4, 2005; decided February 10, 2005

## POINTS OF COUNSEL

*Quinn Emanuel Urquhart Oliver & Hedges, LLP,* New York City (*Michael B. Carlinsky, Kevin S. Reed* and *Partha P. Chattoraj* of counsel), *Pierre M. Gentin, George C. Whipple III,* and *Gideon A. Schor* for appellant. I. The Federal Arbitration Act and controlling decisions by this Court and numerous federal courts establish that parties may supersede the Form U-4 and self-regulatory organizations' arbitration rules with privately negotiated agreements. (*Doctor's Assoc., Inc. v Casarotto,* 517 US 681; *Matter of Salvano v Merrill Lynch, Pierce, Fenner & Smith,* 85 NY2d 173; *Flanagan v Prudential-Bache Sec.,* 67 NY2d 500; *Fletcher v Kidder, Peabody & Co.,* 81 NY2d 623; *Gerling Global Reins. Corp. v Home Ins. Co.,* 302 AD2d 118; *Southland Corp. v Keating,* 465 US 1; *Matter of Smith Barney, Harris Upham & Co. v Luckie,* 85 NY2d 193; *Volt Info. Sciences, Inc. v Board of Trustees of Leland Stanford Jr. Univ.,* 489 US 468; *Mastrobuono v Shearson Lehman Hutton, Inc.,* 514 US 52; *Matter of Advest, Inc. v Wachtel,* 253 AD2d 659.) II. The Employment Dispute Resolution Program's "carve-out" provision is inapplicable because neither the Form U-4 nor the New York Stock Exchange (NYSE) Rules legally require registered representatives to arbitrate exclusively before the NYSE. (*Roney & Co. v Goren,* 875 F2d 1218; *Creative Sec. Corp. v Bears Stearns & Co.,* 671 F Supp 961.)

*Wechsler & Cohen, LLP,* New York City (*David B. Wechsler* and *Marc O. Sheridan* of counsel), for respondents. I. Credit Suisse First Boston Corporation's Federal Arbitration Act argu-

ment is belated and barred. (*Matter of Eagle v Paterson,* 57 NY2d 831; *Melahn v Hearn,* 60 NY2d 944; *Harrison v Salomon Bros.,* 156 Misc 2d 341; *Simpson v Loehmann,* 21 NY2d 990.) II. The First Department correctly held that New York state law, not the Federal Arbitration Act, controls, and that accordingly the arbitration provision in the Form U-4 may not be superceded by a subsequent employment agreement. (*Hamilton v Cantor Fitzgerald Sec.,* 265 AD2d 526; *O'Donnell v First Invs. Corp.,* 872 F Supp 1274; *Harrison v Salomon Bros.,* 156 Misc 2d 341; *Gilmer v Interstate/Johnson Lane Corp.,* 500 US 20; *Volt Info. Sciences, Inc. v Board of Trustees of Leland Stanford Jr. Univ.,* 489 US 468; *F.N. Wolf & Co. v Bowles,* 160 Misc 2d 752; *Thomas James Assoc., Inc. v Jameson,* 102 F3d 60; *Merrill Lynch, Pierce, Fenner & Smith, Inc. v Georgiadis, Inc.,* 903 F2d 109; *Luckie v Smith Barney, Harris Upham & Co.,* 999 F2d 509; *Matter of Cowen & Co. v Anderson,* 76 NY2d 318.) III. Even if the Federal Arbitration Act applies, the First Department correctly held that respondents fit squarely under the Employment Dispute Resolution Program carve-out directing arbitration at the New York Stock Exchange. (*Bushley v Credit Suisse First Boston,* 360 F3d 1149; *Surgidev Corp. v Eye Tech., Inc.,* 648 F Supp 661, 828 F2d 452.) IV. The First Department correctly ruled that the obligation here to arbitrate in the New York Stock Exchange forum is imposed on Credit Suisse First Boston Corporation and respondents due to their affiliation with and assent to the Rules of the New York Stock Exchange. (*Matter of Harrigan,* 126 Misc 2d 298; *CBS Broadcasting v Primetime 24 Joint Venture,* 48 F Supp 2d 1342; *Credit Suisse First Boston, LLC v Padilla,* 326 F Supp 2d 508; *Smith/Enron Cogeneration Ltd. Partnership, Inc. v Smith Cogeneration Intl., Inc.,* 198 F3d 88.) V. Credit Suisse First Boston Corporation has not met its burden of establishing that respondents knowingly, voluntarily and intentionally waived their right to arbitrate before a self-regulatory organization. (*Johnson v Zerbst,* 304 US 458; *Merrill Lynch, Pierce, Fenner & Smith v Georgiadis, Inc.,* 903 F2d 109; *Ray v Credit Suisse First Boston Corp.,* 200 F Supp 2d 532.) VI. Credit Suisse First Boston Corporation's contention that the decision and order has far-reaching adverse consequences for the entire securities industry is without evidentiary support or merit.

## OPINION OF THE COURT

ROSENBLATT, J.

This appeal calls upon us to address two questions. First, can

an arbitration clause of a privately negotiated employment agreement between a broker-dealer and its registered representative employees supersede the arbitration provisions of an earlier agreement between the employees and the New York Stock Exchange? Second, under the employment agreement at issue, did the parties supersede the preexisting agreement as it applies to this dispute? We answer the first question yes and the second no.

## I.

Credit Suisse First Boston (CSFB), a member of the New York Stock Exchange (NYSE) and other exchanges, hired William Pitofsky in 1985 and Edward Santoro in 1997. During 2000 and 2001, CSFB employed them as real estate salespersons to help liquidate multi-billion dollar real estate portfolios. When they started work, both Pitofsky and Santoro executed Uniform Application for Securities Industry Registration or Transfer forms U-4 (Form U-4) transferring their securities industry registrations to CSFB. They filed these forms with several self-regulatory organizations (SROs), including the NYSE and the National Association of Securities Dealers. A Form U-4 contains a standard arbitration clause requiring registered representatives "to arbitrate any dispute, claim or controversy that may arise between [them] and [their] firm . . . that is required to be arbitrated under the rules, constitutions, or by-laws of the [relevant SRO]."

In January 1998, CSFB adopted an Employment Dispute Resolution Program (EDRP) and announced it in the employee handbook. Pitofsky's and Santoro's 2000 and 2001 employment agreements with CSFB incorporated the EDRP's provisions by specific reference.

By its terms, the EDRP applies to employment-related claims that employees might have against CSFB and provides that it is the only means by which employees may seek to resolve such claims. The EDRP sets forth a three-stage grievance process. The first stage involves an internal grievance procedure, which is initiated when employees alert their immediate supervisors of a dispute. The second entails external mediation by a single mediator supplied by JAMS/Endispute, a provider of dispute resolution services. If CSFB and the employee fail to resolve their dispute in the first two stages, the EDRP's third stage calls for binding arbitration before JAMS/Endispute, the American Arbitration Association or the Center for Public Resources

Institute for Dispute Resolution. Under the EDRP, the first party to seek arbitration may determine which of the three to employ.

Although the EDRP generally applies to all employment-related disputes, it features a carve-out provision, stating that

> "[i]f a registered representative is subject to a *legal requirement* that he or she arbitrate Employment-Related Claims pursuant to particular rules or in a particular forum (for example, at or pursuant to the rules of a stock exchange), to the exclusion of other forums and rules, that requirement will prevail over the arbitration procedures described herein" (emphasis added).

The provision also explains that registered representatives subject to the carve-out must satisfy the EDRP's internal grievance and mediation requirements before proceeding to arbitration under the auspices of a non-EDRP forum.

CSFB terminated Pitofsky's and Santoro's employment in March 2002. Following their dismissals, both Pitofsky and Santoro claimed that CSFB owed them additional monies under their employment contracts, and proceeded under the first and second steps of the EDRP. When resort to CSFB's grievance and mediation process failed, the pair sought arbitration before the NYSE, pursuant to their Forms U-4, instead of one of three organizations specified by the EDRP.

Claiming that, first, the EDRP superseded the Form U-4 and, second, that the EDRP carve-out was inapplicable, CSFB insisted on arbitration before JAMS, one of the three groups identified by the EDRP. Pursuant to CPLR 7503 (b),[1] CSFB also sought a permanent stay of the NYSE arbitration. Pitofsky and Santoro cross-moved to compel CSFB to arbitrate before the NYSE and to dismiss CSFB's petition for a permanent stay of arbitration. The two argued that an agreement between a broker-dealer and its registered representative employees cannot supplant the registered representatives' separate, preceding Form U-4 agreements to arbitrate their disputes before the NYSE. In the alternative, they maintained that, even if their agreement with CSFB could supersede their Form U-4 arbitra-

---

1. In pertinent part, CPLR 7503 (b) provides "a party who has not participated in the arbitration and who has not made or been served with an application to compel arbitration, may apply to stay arbitration on the ground that a valid agreement was not made or has not been complied with . . . ."

tion agreement, the EDRP's carve-out exception applied and their dispute was therefore arbitrable only before the NYSE.

Reasoning that the EDRP arbitration procedures supplanted the relevant Form U-4 provision, Supreme Court granted CS-FB's application to stay the NYSE arbitration, directed the parties to proceed to arbitration before JAMS, and denied Pitofsky's and Santoro's cross motion to compel arbitration before the NYSE. The court also rejected their claim that the EDRP carve-out removed them from the EDRP's arbitration regime. The court determined that the EDRP carve-out applied only when the registered representative was "legally required" to arbitrate before a particular SRO, and that neither the NYSE Constitution or Rules nor the Form U-4 established such a requirement.

The Appellate Division reversed, denied CSFB's petition to stay arbitration and directed the parties to arbitrate before the NYSE (2 AD3d 6 [1st Dept 2003]). Characterizing CSFB's position as "erroneous," the Court held that the carve-out provision clearly applied to Pitofsky and Santoro (*id.* at 9). It further determined that, as a matter of state law, "employment agreements cannot supersede the previously executed Form U-4 agreements between" registered representatives and an SRO (*id.*). We granted CSFB leave to appeal from the Appellate Division order, which we now affirm on different grounds.

## II.

■ Whether an arbitration agreement between a broker-dealer and a registered representative may supersede a prior arbitration agreement between the registered representative and an SRO presents a general issue of contract interpretation governed by New York law.[2] Contrary to the Appellate Division's determination, we hold that the arbitration provisions of an employment agreement between a broker-dealer and a registered representative may supersede an earlier arbitration agreement between the registered representative and a stock exchange.

In reaching this conclusion, we need only look to established principles of contract law. Essentially, the present appeal

---

2. CSFB argues that the Federal Arbitration Act (FAA [9 USC § 1 *et seq.*]), not state law, governs this dispute. We disagree. Notwithstanding the generally preemptive sweep of the FAA, the federal statute contemplates that state contract law principles resolve the questions presented on this appeal (*see generally Perry v Thomas*, 482 US 483, 492 n 9 [1987]; *Doctor's Assoc., Inc. v Casarotto*, 517 US 681, 687 [1996]).

involves a valid, enforceable modification of an earlier agreement by a later one. By implication, the EDRP modifies the arbitration requirements set forth by the Form U-4. Moreover, in addition to manifesting their assent to be bound by the EDRP, Pitofsky and Santoro received valuable consideration (continued, lucrative employment by CSFB) for their acceptance of the new arbitration provisions.

Regardless of whether CSFB was technically a direct party to the Forms U-4 executed between its employees and the NYSE, as a practical matter such obligations as Pitofsky and Santoro may have had under the Form U-4 arbitration provision flowed directly and exclusively to CSFB, not the NYSE.[3] Put differently, the arbitration provisions in the Form U-4 effectively constituted an agreement between CSFB and its registered representatives to arbitrate grievances before a NYSE forum.

Given this arrangement, CSFB and its registered representatives were free to negotiate the terms by which they would arbitrate employment-related disputes, just as any two parties to a bilateral contract could agree to modify it. In this context, arbitration is a creature of contract, and it has long been the policy of this State to "interfere as little as possible with the freedom of consenting parties" in structuring their arbitration relationship (*see Matter of Siegel [Lewis]*, 40 NY2d 687, 689 [1976]). Accordingly, the parties were free to supplant or modify the Form U-4 arbitration agreement with the protocols articulated in the EDRP.

## III.

The EDRP exempts registered representatives from its arbitral forum selection provision if they are "subject to a *legal requirement*" to "arbitrate Employment-Related Claims pursuant to particular rules or in a particular forum . . . , to the exclusion of other forums and rules" (emphasis added). Although an arbitration agreement between a broker-dealer and registered representative may modify a Form U-4 agreement, the terms of the EDRP require us to look to the Form U-4 to see whether the carve-out applies. As relevant here, the Form U-4 merely requires registered representatives to arbitrate "any dispute, claim or controversy that may arise between me and

---

**3.** *See generally In re Prudential Ins. Co. of Am. Sales Practice Litig. All Agent Actions*, 133 F3d 225 (3d Cir 1998) (holding that an employer had standing to compel arbitration under a Form U-4, even if it is not a signatory to the agreement).

my firm . . . that is required to be arbitrated under the rules, constitutions, or by-laws" of the SROs with which they registered.

█ In turn, the Form U-4 directs us to look to the particular rules of the NYSE to determine whether Pitofsky and Santoro face a "legal requirement" to arbitrate their claims before that organization. Critical to our analysis, NYSE Rules, rule 347 (a) provides that

> "any controversy between a registered representative and any member or member organization arising out of the employment or termination of employment of such registered representative by and with such member or member organization shall be settled by arbitration, *at the instance of any such party*, in accordance with the arbitration procedure prescribed elsewhere in these rules" (emphasis added).

Pitofsky and Santoro argue that this rule establishes a legal requirement for them to arbitrate before the NYSE. We agree.

CSFB maintains that, on its face, the phrase "at the instance of any such party" suggests that there is no binding obligation for either CSFB, or Pitofsky or Santoro, to arbitrate before the NYSE. The parties, CSFB claims, would face a legal requirement to arbitrate before the NYSE only if one of them affirmatively elected it as a forum. This does not amount to a legal requirement, CSFB argues. In support of this position, CSFB cites two recent Federal District Court cases (*see Credit Suisse First Boston, LLC v Padilla*, 326 F Supp 2d 508 [SD NY 2004]; *Credit Suisse First Boston, LLC v Groves*, 333 F Supp 2d 229 [SD NY 2004]).

Respectfully, we disagree with these decisions and believe that NYSE rule 347 does create a legal requirement. The sole significance of the phrase "at the instance of any such party" is that it gives both the employer and the registered representative a right to initiate arbitration before the NYSE. As it pertains to this case, however, there is no meaningful distinction between a rule 347 with the words "at the instance of any such party" and a rule 347 without such language. If a hypothetical rule 347 were simply to read "the parties shall arbitrate," it would operate in the same manner as the present rule if neither party wanted to arbitrate before the NYSE. Under the hypothetical rule 347, the parties would be under no

greater compulsion to arbitrate before the NYSE than they would under the present rule. In both cases, the parties could agree to modify the NYSE arbitration requirement or waive it altogether.

That the parties could, in theory, agree to modify their obligation to arbitrate before the NYSE pursuant to rule 347 does not make the rule any less of a "legal requirement." Because arbitration agreements are inherently contractual, the parties may agree to modify them. The ability to alter prior agreements by mutual assent is, after all, essential to contract. A contract does not lose its legally binding character merely because it may be waived or modified. We therefore hold that the arbitral obligation created by the interplay of the Form U-4 and rule 347 constitutes a "legal requirement" under the EDRP carve-out.

Although it is not central to our analysis, we note, additionally, that CSFB itself announced that the carve-out applied to claims brought by registered representatives. In January 1999, CSFB circulated a notice to all of its registered representative employees, informing them that the EDRP's third stage

> "provides for arbitrations thereunder to take place through one of three designated service providers, none of which is affiliated with the securities industry. When the Program was instituted, an exception was made to these and other provisions of the Program relating to arbitration for claims of employees registered with the NASD or a stock exchange ('RRs') that were of a type that the RRs were required, under their U-4s, to arbitrate before the NASD or a stock exchange, pursuant to its rules. The Program provided that, as to these claims, the NASD and stock exchange rules regarding arbitration took precedence over the arbitration rules in the Program."

The memorandum further stated that the EDRP's primary focus was statutory discrimination claims. The stock exchanges, the notice explained, had begun eliminating the requirement that such claims be arbitrated before them. In short, CSFB's contention that Pitofsky and Santoro fail to satisfy the "legal requirement" provision of the EDRP carve-out does not square with its own reading of the employment agreement.

Accordingly, the order of the Appellate Division should be affirmed, with costs.

Chief Judge KAYE and Judges G.B. SMITH, CIPARICK, GRAFFEO, READ and R.S. SMITH concur.

Order affirmed, with costs.