[No. 54215-0-I. Division One. May 2, 2005.]

R. Gerald Todd, *Respondent*, v. Venwest Yachts, Inc., et al., *Petitioners*.

---

*Charles P. Moure* and *Daniel P. Harris* (of *Harris & Moure, P.L.L.C.*), for petitioners.

*James R. Dickens* (of *Miller Nash, L.L.P.*), for respondent.

¶1 AGID, J. — R. Gerald Todd sued his former employer, Venwest Yachts, Inc., for commissions he said Venwest owed him for boats he sold or listed for sale. Venwest moved to dismiss or stay the proceedings, arguing that Todd was required to mediate and/or arbitrate his dispute according to the bylaws of the Northwest Yacht Broker's Association (NYBA). The trial court denied Venwest's motion. Because nothing in the parties' employment relationship indicated that they intended to be bound by the NYBA's arbitration provision, we affirm the trial court.

## FACTS

¶2 Venwest Yachts employed Todd as a commission-based salesperson under an oral contract from January 2000 until Todd resigned on June 30, 2003. Both Venwest and Todd are members of the NYBA.[1] Before he resigned, Todd had contracted to sell one yacht and took listings for several other boats which Venwest later sold. On March 1, 2004, after several unsuccessful attempts to recover the commissions he claimed Venwest owed him from the yacht sale and boat listings, Todd filed a complaint against Venwest and its owners, Randy and Maureen Cowley.[2]

¶3 Venwest answered, pleading as an affirmative defense that Todd failed to mediate and/or arbitrate the claims between the parties as required by the NYBA bylaws. It then moved to dismiss or stay the proceedings pending mediation and arbitration. The trial court ruled that "the parties did not incorporate the NYBA bylaws into their employment agreement and [the court] does not apply the NYBA bylaws to this dispute." Venwest appeals.

---

[1] Todd and Venwest became members independently of each other, and Venwest did not require that Todd be a member as part of his employment.

[2] We refer to Venwest and the Cowleys collectively as "Venwest." Todd's complaint also alleged that Venwest overcharged him for advertising his boat for sale and failed to return some of his personal property.

## DISCUSSION

¶4 Venwest concedes that Todd's employment agreement did not contain an arbitration provision or incorporate the NYBA rules. Instead, it relies on the breadth of the NYBA arbitration provision. The NYBA membership application form states:

> If accepted as a member in good standing into the NORTH-WEST YACHT BROKERS ASSOCIATION, I agree to abide by and conform to the constitution, By Laws, Code of Ethics and policies of the Association.
>
> Date: _____ Applicant's Signature: _____

Article IX of the bylaws contains the "Mediation and Binding Arbitration" clause requiring mediation and/or arbitration "[w]hen a dispute arises between members, between members and nonmember, or between members and the public . . . ."

¶5 We review questions of arbitrability de novo.[3] Venwest argues that because Todd agreed to follow the NYBA arbitration clause when he became a member of the NYBA, he must mediate and arbitrate the current dispute. It asserts that it was not necessary to incorporate the NYBA arbitration provision in their employment contract because Todd had already agreed to it when he became a member of the NYBA. Todd argues that he did not agree to arbitrate this kind of dispute when he became a member of the NYBA. He contends that the NYBA arbitration clause was not intended to and does not cover employment disputes.

¶6 Todd does not dispute that the NYBA membership agreement to arbitrate falls within the scope of the Federal Arbitration Act (FAA).[4] The FAA was designed to "ensure judicial enforcement of privately made agreements

---

[3] *Walters v. A.A.A. Waterproofing, Inc.*, 120 Wn. App. 354, 357, 85 P.3d 389 (2004) (citing *Kamaya Co. v. Am. Prop. Consultants, Ltd.*, 91 Wn. App. 703, 713, 959 P.2d 1140 (1998), *review denied*, 137 Wn.2d 1012 (1999)).

[4] Title 9 U.S.C.

to arbitrate."[5] But the duty to arbitrate is a contractual obligation controlled by the parties' intentions, and the FAA " 'does not require parties to arbitrate when they have not agreed to do so. . . .' "[6] The courts interpret agreements in favor of arbitrability.[7] "Our inquiry is two-fold: whether the parties agreed to arbitrate and, if so, whether the scope of that agreement encompasses the asserted claims."[8] Venwest argues that the parties agreed to arbitrate by virtue of their memberships in the NYBA, so we must first determine whether the parties intended to be bound by the NYBA arbitration clause in their employment relationship.

█ ¶7 Venwest asserts that agreements to arbitrate may be incorporated into a parties' agreement by reference to a separate document which has an arbitration provision. It cites two cases in which courts held that disputes arising from parties' private agreements were governed by outside arbitration agreements. In *David L. Threlkeld & Co. v. Metallgesellschaft Ltd.*, written contracts between metal traders did not contain an arbitration clause but did incorporate by reference the London Metal Exchange's (LME) rules and regulations. Those rules did have an arbitration clause.[9] The Second Circuit held that the parties agreed to arbitrate by incorporating the LME rules into their contracts, even though the contracts did not themselves contain an arbitration agreement. In *Exchange Mutual Insurance Co. v. Haskell Co.*, the Sixth Circuit held that a surety on a performance bond was bound to arbitrate. The perfor-

[5] *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 219, 105 S. Ct. 1238, 84 L. Ed. 2d 158 (1985).

[6] *Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 19 (2d Cir. 1995) (quoting *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468, 478, 109 S. Ct. 1248, 103 L. Ed. 2d 488 (1989)).

[7] *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626, 105 S. Ct. 3346, 87 L. Ed. 2d 444 (1985).

[8] *David L. Threlkeld & Co. v. Metallgesellschaft Ltd.*, 923 F.2d 245, 249 (2d Cir.) (citing *Fleck v. E.F. Hutton Group, Inc.*, 891 F.2d 1047, 1050 (2d Cir. 1989); *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 844 (2d Cir. 1987); *Mitsubishi*, 473 U.S. at 626-28), *cert. denied*, 501 U.S. 1267 (1991).

[9] 923 F.2d 245, 249 (2d Cir.), *cert. denied*, 501 U.S. 1267 (1991).

mance bond incorporated by reference a subcontract, which in turn incorporated by reference a general contract that contained an arbitration provision.[10]

¶8 We agree that when the parties' employment agreement has incorporated an arbitration clause by reference, the arbitration clause may be enforced. But these parties did not do so. The parties' employment agreement did not even refer to the NYBA, so it could not be interpreted as incorporating that organization's arbitration clause. Venwest apparently acknowledges that the parties' employment agreement does not incorporate the NYBA's arbitration clause. Instead, it argues that because both parties are NYBA members, the NYBA's arbitration clause automatically governs any disputes that arise in their employment relationship. Venwest analogizes the NYBA's arbitration clause to the National Association of Securities Dealers' (NASD) Code of Arbitration (Code), which applies to employment disputes between NASD members even where the members' employment agreements do not reference the NASD Code. But the analogy does not hold up.

¶9 The NASD regulates securities brokers in the United States, and membership is mandatory. The NASD requires that all securities dealers complete a Uniform Application for Securities Industry Registration or Transfer Form U-4 (U-4) when they begin work at a firm or transfer from one firm to another. The U-4 contains a standard arbitration clause by which registered representatives agree " 'to arbitrate any dispute, claim or controversy that may arise between [them] and [their] firm . . . that is required to be arbitrated under the rules, constitutions, or by-laws of the [NASD].' "[11] The U-4 is thus an integral part of all NASD members' employment agreements. By executing a U-4 every time they start a new job, NASD members agree to

---

[10] 742 F.2d 274 (6th Cir. 1984).

[11] *See, e.g., Credit Suisse First Boston Corp. v. Pitofsky*, 4 N.Y. 3d 149, 824 N.E.2d 929, 930, 791 N.Y.S.2d 489 (2005) (first and second alterations in original) (quoting U-4 arbitration clause); *A.G. Edwards & Sons, Inc. v. Clark*, 558 So. 2d 358, 359 (Ala. 1990) (citing plaintiff broker's U-4 agreement).

have their employment relationship governed by the NASD Code. Under these circumstances, it is appropriate to require members to arbitrate their disputes.[12]

¶10 The NYBA is a purely voluntary organization: "Any yacht broker, independent contractor or staff salesperson in the business of selling boats *may* join the NYBA as an Individual Member."[13] A yacht salesman is not required to be a NYBA member, and Venwest did not require that Todd be a member. At the times Todd and Venwest each joined the NYBA, neither could have intended that the NYBA's arbitration clause would apply to their then-unknown employment relationship. Unlike the NASD, the NYBA does not purport to regulate its members' businesses. And again, unlike the NASD, it is not concerned with its members' employment relationships.[14] Unlike the NASD Code, which is incorporated by reference into all NASD members' employment agreements when they complete the U-4, the NYBA arbitration clause is not automatically incorporated into anything, including NYBA members' employment agreements. Unless the employer and employee intend otherwise, the NYBA's arbitration clause is not a required component of a NYBA member's employment relationship.

---

[12] *First Investors Corp. v. Am. Capital Fin. Servs., Inc.*, 823 F.2d 307, 309 (9th Cir. 1987).

[13] NYBA membership application form. (Emphasis added.)

[14] Article II, section 1 of the NYBA bylaws sets out the organization's purposes:

(1) To actively promote boating to the general public, via a diversity of activities that include, but are not limited to, putting on boat shows, clinics and seminars;

(2) To define an organization that addresses the special needs of those involved in selling new and used yachts, and related marine activities;

(3) To unite those engaged in the business of new and used yacht sales for the purpose of promoting cooperation and professionalism among its members;

(4) To promote and maintain a high standard of conduct in the transacting of the yacht sales business;

(5) To instill into the boating public a greater confidence in yacht brokers and dealers;

(6) To encourage a greater interest in the welfare and safety of the boating public, through such endeavors as public education, lobbying efforts and cooperation with other organizations.

¶11 There is no evidence that either Todd or Venwest intended that the NYBA's arbitration clause would play a role in their employment relationship. In the absence of some indication that they intended to be bound by the NYBA's arbitration clause, we will not imply that intent. We affirm the trial court's ruling and remand for further proceedings.

ELLINGTON, A.C.J., and BAKER, J., concur.

Reconsideration denied June 23, 2005.

Review denied at 156 Wn.2d 1025 (2006).