**Carlson v. Janney Montgomery Scott LLC**

C.P. of Philadelphia County, August Term 2005, no. 0468.

*Barry R. Elson,* for plaintiff/appellee.
*Michael L. Banks,* for defendant/appellant.

QUIÑONES ALEJANDRO, *J.,* April 5, 2006—

## INTRODUCTION

On August 3, 2005, Denis Carlson (plaintiff) filed a civil action against his employer, Janney Montgomery Scott LLC (defendant), averring inter alia counts of breach of fiduciary duty, conflict of interest, defamation, conversion, violation of the Pennsylvania Wage Payment and Collection Law, unjust enrichment, and tortious interference with prospective economic advantage.

On August 25, 2005, defendant filed a pleading entitled preliminary objections and a petition to compel arbitration, to which plaintiff filed a response. By order dated November 8, 2005, this motion judge overruled

defendant's preliminary objections and denied the petition to compel arbitration.

On November 22, 2005, defendant filed the instant appeal.

## RELEVANT FACTUAL AND PROCEDURAL HISTORIES

After a careful review of the pleadings filed, this motion judge considered the following:

Defendant is a brokerage company registered with the New York Stock Exchange and the National Association of Securities Dealers (NASD).[1] In turn, NASD is a private not-for-profit corporation organized under the laws of the State of Delaware and is a self-regulating organization (SRO) registered with the Securities and Exchange Commission (SEC), as a national securities association.[2] Pursuant to rules promulgated by SEC, NASD adopted mandatory procedures and safeguards relating to the handling of securities matters and the services of registered representatives.[3] These procedures include, inter alia, a requirement that an employee handling publicly traded securities register at the commencement of his/her employment with NASD by using "Form U4 Uniform application for securities industry registration or transfer" (Form U4).[4] This form also registers the employee with

---

1. Defendant's preliminary objections, memorandum of law, page one.

2. See *Desiderio v. National Association of Securities Dealers Inc.,* 2 F. Supp.2d 516 (1998).

3. Defendant's preliminary objections, memorandum of law, page one.

4. See 17 C.F.R. §240.15b7-1.

the New York Stock Exchange (NYSE) and the American Stock Exchange (AMEX). Another of NASD's safeguards (Rule 1140(c)(1)) requires that every initial and transferred electronic filing of Form U4 shall be based on a signed Form U4, which must be retained and made available promptly upon regulatory request.[5]

From February 2002 until July 1, 2004, plaintiff was employed by defendant as a senior vice-president and director of public finance in a branch located in Philadelphia, Pennsylvania.[6] Plaintiff supervised as many as 10 individuals, including five investment bankers and two analysts, who engaged in investment banking and/or securities business on behalf of defendant.[7]

Defendant contends that on February of 2002, it registered plaintiff with NASD by electronically filing a Form U4. Plaintiff denies this assertion and proclaims that at no time during his employment was he asked to sign a Form U4, nor was he provided with a written notice of the arbitration provision contained in Form U4 and/or its scope.[8] Defendant does not dispute that it cannot produce a Form U4 signed by plaintiff.[9]

In its relevant section, Form U4 provides:

"I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer or any other person, that is required to be arbitrated under the rules, constitutions or by-laws of the SROs indicated

---

5. Plaintiff's response to motion, memorandum of law, page four.

6. Defendant's preliminary objections, ¶1; plaintiff's complaint, ¶5.

7. Defendant's preliminary objections, memorandum of law, page two.

8. Plaintiff's response to motion, page three.

9. Plaintiff's response to motion, page five.

in Item 11 as may be amended from time to time and that any arbitration award rendered against me may be entered as a judgment in any court of competent jurisdiction." [10]

On October 17, 2003, during a Federal Bureau of Investigation (FBI) inquiry of the "pay to play" alleged corruption of the Philadelphia government, plaintiff was interviewed at his place of employment by the FBI.[11] During the interview, Howard B. Scherer, Esquire, a senior vice-president and corporate counsel of defendant in the Philadelphia office, was present.[12] According to plaintiff, although he did not speak to Attorney Scherer, he assumed that Attorney Scherer was present to protect his [plaintiff's] legal interest[13] since plaintiff was never advised by Attorney Scherer to the contrary and/or that he should obtain his own counsel.[14] After the interview, defendant provided plaintiff with counsel from a law firm that often represented defendant.[15]

On June 29, 2004, plaintiff was indicted for providing the FBI with false information.[16] While being processed, plaintiff tested positive for cocaine.[17] After he was indicted, defendant informed plaintiff that it would no longer pay for his legal counsel.[18]

---

10. Defendant's preliminary objections, ¶5.

11. Plaintiff's complaint, ¶9.

12. *Id.* at ¶12, ¶13.

13. *Id.* at ¶13, ¶14.

14. *Id.* at ¶16.

15. *Id.* at ¶18.

16. *Id.* at ¶19.

17. Defendant's preliminary objections, memorandum of law, page one.

18. Plaintiff's complaint, ¶20.

On July 1, 2004, defendant terminated plaintiff's employment based on the indictment and for testing positive for cocaine use.

On July 30, 2004, defendant filed with the SEC a "U5-Uniform termination notice for security industry registration" (Form U5) without, according to plaintiff, conducting its own internal investigation relevant to the October 17, 2003 interview.[19] This Form U5, which is a publicly accessible document, indicated that plaintiff was under investigation for a breach of industry standards and that he was terminated for drug use while under federal indictment and on leave of absence.

On February 1, 2005, plaintiff was acquitted by a jury of all charges in the federal indictment.[20] Sometime in June 2005, defendant amended the Form U5 to reflect plaintiff's acquittal. Plaintiff contends that this delay is contrary to a NASD rule that requires that amendments to termination notices be made within 30 days.[21] In his complaint, plaintiff further contends that defendant refused to amend the form relating to other details,[22] and that defendant is unlawfully in possession and control of approximately $50,000 which he had earned in the year 2003.[23]

Procedurally, the following events are pertinent to this analysis:

From the official record (dockets), it appears that on August 3, 2005, plaintiff commenced this civil action against defendant. On August 24, 2005, defendant filed

19. *Id.* at ¶35.
20. Plaintiff's complaint, ¶22.
21. *Id.* at ¶42.
22. *Id.* at ¶40.
23. *Id.* at ¶47.

preliminary objections, and plaintiff filed a response thereto on September 8, 2005.

After a stipulation for extension of time to file a motion to determine preliminary objections, defendant, on September 30, 2005, filed a pleading entitled "motion to determine preliminary objections and petition to compel arbitration," and essentially argued that an arbitration agreement existed which encompassed the claims asserted in plaintiff's complaint and, therefore, required that the matter be arbitrated. On October 20, 2004, plaintiff filed a response challenging the existence of such an agreement. These pleadings were assigned to this motion judge after October 25, 2004.

As stated, by order dated November 8, 2005, this motion judge overruled defendant's preliminary objections and denied the petition to compel arbitration, and further ordered defendant to respond to plaintiff's complaint within 20 days.

Defendant did not file a motion to reconsider but instead filed this appeal on November 22, 2005.

## ISSUES

In response to an order issued on November 30, 2005, in accordance with Pa.R.A.P. 1925(b), defendant on December 13, 2005, filed of record and served unto this motion judge a statement of matters complained of on appeal and essentially argued that this motion judge erred in overruling the preliminary objections and in denying the request to compel arbitration.

## LAW AND DISCUSSION

Chapter 3 of Pa.R.A.P. governs the process for orders from which appeals may be taken; to wit: interlocutory

orders where appeals are either as of right or by permission, collateral orders, and final orders. Generally, an order overruling preliminary objections (not involving eminent domain matters) is an interlocutory order which does not fall within one of the enumerated circumstances of Pa.R.A.P. 311 and is, therefore, not appealable. *Callan v. Oxford Land Development Inc.,* 858 A.2d 1229, 1232 (Pa. Super. 2004), citing *Shadduck v. Christopher J. Kaclik Inc.,* 713 A.2d 635, 636 (Pa. Super. 1998). There is, however, a narrow exception to this rule for cases in which the appeal is taken from an order denying a petition to compel arbitration. *Id.* Specifically, Rule 311(a)(8) provides that an interlocutory appeal may be taken as of right from any order which is appealable by statute or general rule. The Uniform Arbitration Act, 42 Pa.C.S. §7320 et seq., provides that an appeal taken from an order denying a petition or application to compel arbitration is appealable. See 42 Pa.C.S. §§7320(a)(1) and 7342(a). As stated, the instant matter involves an appeal from an order denying a petition to compel arbitration and, therefore, in this motion judge's opinion, is properly before the appellate court for review.

This motion judge acknowledges that Pennsylvania courts strongly favor the resolution of legal disputes by arbitration. *Ross Development Co. v. Advanced Building Development Inc.,* 803 A.2d 194, 196 (Pa. Super. 2002). The procedure for a court to compel arbitration is provided in 42 Pa.C.S. §7304, which essentially allows that upon application/petition to compel arbitration made by a party showing an agreement to arbitrate and a showing that the opposing party refused to arbitrate, the court shall order the parties to proceed to arbitration, unless the opposing party denies the existence of the arbitration agree-

ment. In a proceeding to stay or to compel arbitration, the question of whether the parties agreed to arbitrate, commonly referred to as "substantive arbitrability," is generally one for the court and not for the arbitrators. *Ross Development Co.,* 803 A.2d at 196. Where a party to a civil action seeks to compel arbitration, judicial inquiry is limited to the questions of (1) whether an agreement to arbitrate was entered into by the parties and (2) if such an agreement exists, whether the dispute falls within the ambit of the arbitration provision. *Callan,* 858 A.2d at 1233. See also, *Rocca v. Pennsylvania General Insurance Company,* 358 Pa. Super. 67, 70, 516 A.2d 772, 773 (1986), *allocatur denied,* 517 Pa. 594, 535 A.2d 83 (1987); *McNulty v. H&R Block Inc.,* 843 A.2d 1267 (Pa. Super. 2004); *Quiles v. Financial Exchange Co.,* 879 A.2d 281, 283 (Pa. Super. 2005). If a valid agreement exists between the parties and the plaintiff's claim is within the scope of the agreement, the controversy must be submitted to arbitration. *Highmark Inc. v. Hospital Service Association of Northeastern Pennsylvania,* 785 A.2d 93, 98 (Pa. Super. 2001), *appeal denied,* 568 Pa. 720, 797 A.2d 914 (2002).

As to the first prong of this judicial inquiry, it is important to note that there is a dispute over the existence and/or validity of an arbitration agreement. Defendant contends that a valid agreement to arbitrate existed between the parties as provided in Plaintiff's employment contract. In support of this contention, Defendant argues that membership with NASD is mandatory, and that pursuant to the registration with NASD, defendant and its employees were required to abide by all rules and regulations promulgated to police securities brokers in the

United States. Defendant further argues that NASD's official procedures require that all securities dealers complete and sign a Form U4 at the commencement of employment with a security firm and/or transfer from one firm to another. Defendant further contends that Form U4 contains a standard arbitration clause by which registered representatives agree "to arbitrate any dispute, claim or controversy that may arise between them and their firm . . . that is required to be arbitrated under the rules, constitutions, or by-laws of the NASD." Finally, defendant argues that Form U4 is an integral part of all NASD members' employment agreements and, therefore, this matter should be arbitrated.

Plaintiff rebuts defendant's contentions. Plaintiff acknowledges that although it is mandatory to register with NASD, he denies ever signing Form U4, and relies on the fact that defendant has not been able to produce an original or a copy of any Form U4 signed by him. Even the electronically filed Form U4, purported to be plaintiff's, does not contain plaintiff's signature. Plaintiff argues that defendant failed to meet and/or fulfill the requirement set forth in NASD Rules 1140[24] and 3080[25] which require that the electronic filing be of a signed Form U4 and that the registered representative receive a

---

24. Rule 1140 (c) (1) states:

"Every initial and transfer electronic Form U4 filing shall be based on a signed Form U4 provided to the member or applicant for membership by the person on whose behalf the Form U4 is being filed . . . ."

25. Rule 3080 states:

"A member shall provide an associated person with the following written statement whenever the associated person is asked to sign a new or amended Form U4 . . . ."

copy of a written statement whenever a new and/or amended Form U4 is submitted. Since this did not occur in plaintiff's case, plaintiff reasons that there is no proof that he agreed to arbitrate.

If a valid arbitration agreement exists between the parties and plaintiff's claim is within the scope of the agreement, defendant would be correct in its contentions and this controversy must be submitted to arbitration. See *Quiles, supra* at 283. Under the law, a written agreement to submit any controversy between parties to arbitration is valid, enforceable and irrevocable, "save upon such grounds as exist at law or equity relating to the validity, enforceability or revocation of any contract." 42 Pa.C.S. §7303. The duty to arbitrate is a contractual obligation controlled by the parties' intentions. When the parties' employment agreement has incorporated an arbitration clause by reference, the arbitration clause may be enforced. *Todd v. Venwest Yacht Inc.,* 111 P.3d 282, 284 (2005).

At first glance, case law supports *in part* defendant's contentions that membership in NASD is required of all securities dealers; that this membership is achieved by the execution of Form U4; and that Form U4 is an integral part of all NASD member's employment agreement. *Todd,* 111 P.3d at 283. It does not support *in total* defendant's argument. This motion judge is unable to grant defendant's request absent proof that plaintiff did in fact agree to arbitrate disputes occurring during his employment or that he signed Form U4, *albeit* a prerequisite for employment as a financial consultant or registered representative. Without proof of the original or even a copy of a signed Form U4, this motion judge can-

not find that a valid arbitration agreement existed between the parties. More so, when it appears that NASD (might have) decided (or did decide) to eliminate the mandatory arbitration provision contained in Form U4 on August 7, 1997, according to a footnote in *Desiderio,* 2 F. Supp.2d at 519. A careful review of NASD's rules does not confirm or dispel whether said elimination is still currently in effect. NASD's rules provide for an arbitration procedure, but do not specify whether arbitration is mandatory. Only Form U4 mandates arbitration.

Further, pursuant to section 7304(a) of the Uniform Arbitration Act, it is defendant's assigned burden to demonstrate that a valid agreement exists between the parties and, in this motion judge's opinion, it has not. Defendant supplied, as an exhibit to an affidavit of an employee of defendant, [who attested to a responsibility of ensuring that forms required by NASD are filed], a computer printout of an unsigned Form U4 (relicense) purportedly filed on behalf of plaintiff. However, where the signature line *and* the "type or print name of applicant" line are (page 9 of 13), there is no name or identifying information of anyone, let alone plaintiff's identifying information or plaintiff's signature.

In light of the diagonally opposing positions of the parties, the omissions contained in the Form U4 attached as an exhibit, the non-existence of a signed Form U4, and the uncontroverted allegation by plaintiff that defendant never provided him with written notice of the Form U4 arbitration provision, this motion judge must rule in light most favorable to plaintiff. This motion judge cannot extend an agreement to arbitrate by implication because defendant says an agreement exists when plain-

tiff denies its existence, and there is no documentary evidence to support it.

Consistent with this motion judge's finding that an arbitration agreement does not exist, there is no need to discuss whether plaintiff's complaint falls within the ambit of an arbitration clause.

## CONCLUSION

Based upon the above-cited analysis and case law, this motion judge is of the opinion that no error was committed when overruling defendant's preliminary objections and denying the petition to compel arbitration. This motion judge respectfully requests that plaintiff's appeal be dismissed and that the orders dated November 30, 2005, be affirmed.