[No. 29755.   Department Two.   February 23, 1946.]

R. G. HOLTON, *Respondent,* v. HART MILL COMPANY, *Appellant.*[1]

[1]Reported in 166 P. (2d) 186.

*Hogan & Adams,* for appellant.

*A. D. Gillies,* for respondent.

BLAKE, J.—Plaintiff brought this action to recover damages for breach of contract for personal services. From judgment in plaintiff's favor for twelve hundred dollars, defendant appeals.

The contract was based on the following letters:

"Hart Mill Co.                 South Bend, Wash.
"Raymond, Wash.             June 21, 1943
"Gentlemen:

"Following the ideas outlined in our recent conversation I am agreeable to the undertaking of the task of maintaining your payroll records.

"Due to the circumstance that I now hold a valuable contract with the Northwestern Mutual Life Insurance Co. of Milwaukee, Wis., I am not free to accept a position with regular hours. Beginning as of June 21, 1943, I will agree to maintain these records to your satisfaction for a period of one year for a flat fee of $2100. The records will be prepared in either my office or your office, whichever best fits the time at my disposal.         Yours very truly

                           R. G. Holton"

"Mr. R. G. Holton           Raymond, Washington
"South Bend, Washington     June 22, 1943
"Dear Sir:

"We acknowledge our recent conversation, as well as your letter of June 21, in which you advised us you agree to maintain the records of our payroll to our satisfaction for a period of one year for a flat fee of $2,100.00.

"It is also understood you are to free lance and may utilize such time as you have available for your own affairs, which, in no respect, will interfere with the work which you do for us.                                     Yours truly
                                                    HART MILL COMPANY
                                                    By A. W. Hart"

The contemplated services consisted of "checking out the time cards, posting them on sheets, extending them, making deductions and writing checks, and delivering them."

That respondent performed the services to the satisfaction of Alfred Hart, is indisputable, for after June 21, 1944, respondent continued to perform the services until Mr. Hart's death in December of that year. Respondent testified:

"Q. What was said or done about a renewal if anything? A. On the 21st of June 1944 I told Mr. Hart my time was up. We were standing out in the front office, and he told me to stay and continue as theretofore. Q. Did you continue as theretofore? A. I did."

The trial court found:

"That on the 21st day of June, 1944, said contract at the solicitation of the defendant, acting through Alfred Hart, the General Manager thereof, was orally renewed on the same terms."

This finding, we think, is warranted in fact and law.

During the year covered by the letters, respondent was paid at irregular intervals sums ranging from one hundred fifty to five hundred dollars. This method of payment continued subsequent to June 21, 1944. From this circumstance, coupled with the respondent's testimony, we think the court's finding as to the renewal of the contract is supported by a preponderance of the evidence. At any rate, we cannot say that the evidence preponderates against it.

Furthermore, where a contract of employment for a definite term expires, and the employee continues to render the same services, the presumption is that he is serving under a new contract having the same terms and conditions. 35 Am. Jur. 454, 497, Master and Servant, §§ 15, 65; *Stewart Dry Goods Co. v. Hutchison*, 177 Ky. 757, 198 S. W. 17,

L. R. A. 1918C, 704; see note to *Conrad v. Ellison-Harvey Co.*, 120 Va. 458, 91 S. E. 763, Ann. Cas. 1918B, 1171.

In October, 1944, Alfred Hart went to a hospital suffering from an illness which resulted in his death in the middle of December. During the period that Hart was in the hospital, his managerial duties were taken over by J. T. Herber, who lived in Seattle. Herber visited Raymond, where the mill was located, at weekly intervals. Respondent continued to perform his duties until about December 19th, the day Mr. Hart was buried. Shortly after the funeral, he was informed by the auditor of the appellant that he would be discharged as of December 31st. In so informing respondent, the auditor acted under instructions from Herber. No reason was given at the time for Herber's action, nor does it appear that Herber assigned any reason to the auditor for his discharging respondent.

The auditor testified that, upon receiving the information, respondent said, "Suits me," or words to that effect, and appellant contends that respondent performed no further services. From these facts, appellant argues that respondent waived his rights under the contract.

We do not think the inference has any foundation in fact or law. The respondent did perform services subsequent to the day he was notified of his discharge, and we think he did all the work required under his contract between that date and December 31st. Whatever he might have said at the time he was notified that he was discharged, cannot be construed as a waiver of his rights under the contract in the light of his conduct.

"It is elementary that, when there is no element of estoppel, it requires a meeting of minds to make or to *terminate* a contract." (Italics ours.) *Western Lumber & Pole Co. v. Joslyn,* 66 Wash. 524, 120 Pac. 69.

That respondent had no intention of waiving his rights, is manifest from the fact that he consulted an attorney the same day that he was notified of his discharge. Indeed, his conduct ever since has demonstrated that he had no intention of waiving his rights under the contract. See 67 C. J. 306.

■ Appellant contends, and offered evidence in support of the contention, that respondent was discharged for the reason that he had failed to "maintain the records of our payroll *to our satisfaction* . . . " (Italics ours.)

From the testimony of Herber and of the auditor, we think the inference is irresistible that respondent's discharge was based on the theory that his employment was for an indefinite period, and that he could, therefore, be discharged at will and without cause or reason. Viewing the issue factually, we are satisfied that dissatisfaction with his services did not enter into the reasons underlying his discharge.

■ Appellant contends that the court did not apply the correct measure of damages. The amount allowed was the difference between the sum appellant had agreed to pay and the sum respondent had received under the renewal agreement—there being no showing that the respondent could have diminished his damages by obtaining other similar employment in the same locality. Appellant concedes this to be the correct measure of damages in case the relationship of the parties is that of master and servant. But, argues appellant, the respondent was an independent contractor, and, therefore, was entitled to recover the difference between the balance due on his contract and the reasonable cost of performance—had he been permitted to perform it.

Conceding the relationship and the rule, we fail to apprehend its application to the facts of this case. The contract was for purely personal services, in the performance of which there could be no possible expense.

Judgment affirmed.

DRIVER, C. J., BEALS, ROBINSON, and JEFFERS, JJ., concur.