224 P.3d 787 (2009)
153 Wash.App. 502
Reba WEISS, a single person, Respondent,
v.
Judith A. LONNQUIST, a single person, and Law Offices of Judith A. Lonnquist, P.S. a Washington professional services corporation, Appellants.
No. 62754-6-I.
Court of Appeals of Washington, Division 1.
December 14, 2009.
*789 Elizabeth L. Van Moppes, Law Offices of Elizabeth Van Moppes, Seattle, WA, for Appellants.
Judith A. Lonnquist, Law Offices of Judith A. Lonnquist, P.S., Seattle, WA, pro se.
Robert B. Gould, Attorney at Law, Seattle, WA, for Respondent.
DWYER, A.C.J.
¶ 1 Where a fixed term employment contract expires and the employee continues to render the same services provided under the previous agreement, a court will presume that the employee is serving under a new, implied contract having the same terms and conditions as contained in the expired contract. However, where it is clear that the implied contract does not have the same terms and conditions as the earlier agreement, there is no basis to presume that the contracting parties necessarily renewed any specific term of the prior agreement. Because the evidence in the record and the pleadings herein establish that Judith Lonnquist and Reba Weiss did not completely renew the terms of Weiss's written, fixed-term employment contract after Lonnquist terminated it, there is no basis to presume that the parties subsequently entered into an implied agreement to arbitrate Weiss's employment-related claims as was provided for in the terminated contract. Inasmuch as a court cannot compel litigants to arbitrate claims unless they agreed to do so, the trial court correctly denied Lonnquist's motion to compel arbitration. Accordingly, we affirm.

I
¶ 2 On November 1, 2005, Weiss and Lonnquist executed a fixed-term employment contract ("the 2005 contract" or "the employment contract") employing Weiss as a full-time attorney with Lonnquist's law firm, the Law Office of Judith A. Lonnquist, P.S., a Seattle firm focusing on labor and employment matters.[1] According to the contract, Weiss would be "of counsel" to the firm, receive an annual base salary of $80,000 and employee benefits, and have a minimum billable hours target of 32 hours per week or 1,600 hours per year. The parties specified that "this Agreement shall be one year, from November 1, 2005 through October 31, 2006." The parties further specified two conditions under which the employment contract could be terminated during its term. First, the contract provided that Lonnquist had the right to immediately terminate Weiss's employment "for cause." Second, it provided that either party was entitled to terminate Weiss's employment without cause upon 30 days' written notice.[2] Finally, the contract *790 contained an arbitration clause in which the parties agreed that "[a]ny dispute arising under this Agreement ... shall be submitted first to mediation and if still unresolved, to binding arbitration."[3]
¶ 3 Approximately nine months after executing the employment contract, Lonnquist decided to terminate it, supposedly because Weiss failed to meet billable hours targets. On July 14, 2006, Lonnquist provided Weiss with 30 days' notice of her intent to terminate the employment contract as of August 13, 2006. Lonnquist did not, however, terminate Weiss's employment with the firm. Weiss continued to work as an employee of the firm, apparently earning the same salary and benefits and subject to the same minimum billable hours targets as were provided in the now-terminated 2005 contract.
¶ 4 A little more than a year later, Lonnquist decided to fire Weiss. On August 20, 2007, Lonnquist gave Weiss 30 days' notice that her employment with the firm would terminate as of September 18, 2007.
¶ 5 The parties sharply dispute the reason why Lonnquist finally decided to terminate Weiss's employment with the firm. Lonnquist maintains that she did so because Weiss consistently failed to meet her minimum billable hours targets, resulting in a drain on the firm's financial resources. Weiss alleges that she was fired because she refused to file purportedly false witness testimony and an accompanying motion before a court on behalf of one of the firm's clients.
¶ 6 Whatever the reason for Weiss's discharge, her employment did not last even through the end of August. On August 22, Lonnquist restructured Weiss's compensation for the final month of her employment from a fixed salary to a sliding wage scale according to the number of hours Weiss billed. The next day, Weiss entered a hospital complaining of chest pains. Shortly thereafter, Weiss notified Lonnquist that she would not return to work at the firm. Lonnquist posted an announcement on the listservs of two Washington lawyer associations stating that Weiss was no longer employed by the firm and that Weiss's departure had "become more difficult than I would have hoped." Weiss's employment with the firm was terminated as of August 26, 2007.
¶ 7 In May 2008, Weiss sued Lonnquist, bringing five causes of action against her: (1) a claim for wrongful termination in violation of the public policy against lawyers knowingly filing false statements; (2) a common law tort claim for extreme and outrageous conduct; (3) statutory claims for unpaid wages, penalties, and fees pursuant to RCW 49.52.050(2) and .070; (4) a claim for defamation; and (5) a claim for negligent infliction of emotional distress.
¶ 8 After engaging in discovery, filing various pretrial motions, and attempting to mediate Weiss's claims, Lonnquist, in October 2008, moved to compel arbitration. In so doing, she initially relied on the arbitration provision in the terminated 2005 contract. Lonnquist then modified her theory, arguing that, after she terminated the 2005 contract, the parties had entered into an implied contract containing the same arbitration agreement as provided for in the 2005 contract. Lonnquist asserted that such an implied contract existed because Weiss continued to work for the firm for the same salary and benefits as she had received prior to termination of the 2005 contract. Lonnquist advanced this argument despite having claimed in September 2007immediately after the termination of Weiss's employmentthat the terms of the 2005 contract did not govern *791 Weiss's employment and that Weiss was employed at will following the termination of the 2005 agreement,[4] and having reiterated this position both in pleadings filed with the trial court[5] and in answers to requests for admission.[6]
¶ 9 Without issuing written findings of fact or conclusions of law, the trial court denied Lonnquist's motion. Lonnquist timely appealed from this order pursuant to RAP 2.2(a)(3). See Stein v. Geonerco, Inc., 105 Wash.App. 41, 43-44, 17 P.3d 1266 (2001) (recognizing that the right to arbitrate is a "substantial right" under RAP 2.2(a)(3), thereby giving rise to a right to appeal directly from an order denying a motion to compel arbitration).

II
¶ 10 Lonnquist contends that the trial court erred in denying her motion to compel arbitration. We disagree.
¶ 11 We review de novo a trial court's order denying a motion to compel arbitration. Walters v. A.A.A. Waterproofing, Inc., 151 Wash.App. 316, 320, 211 P.3d 454 (2009) (citing Adler v. Fred Lind Manor, 153 Wash.2d 331, 342, 103 P.3d 773 (2004)). Regardless of whether the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-16, or the Washington Uniform Arbitration Act (UAA), chapter 7.04A RCW, applies, our analysis as to whether Weiss's claims are subject to arbitration begins in the same manner.[7] As *792 arbitration is a matter of contract, parties cannot be compelled to arbitrate unless they agreed to do so. AT & T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 648, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) (quoting United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960)) (applying FAA); Todd v. Venwest Yachts, Inc., 127 Wash.App. 393, 397, 111 P.3d 282 (2005) (quoting Collins & Aikman Prods. Co. v. Bldg. Sys., Inc., 58 F.3d 16, 19 (2d Cir. 1995)) (applying FAA); RCW 7.04A.070(1) (providing that a court shall order parties to arbitrate upon a "showing [of] an agreement to arbitrate"). Thus, our threshold inquiry concerns whether the parties entered into a valid agreement to arbitrate. McKee v. AT & T Corp., 164 Wash.2d 372, 394, 191 P.3d 845 (2008) (citing Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 445, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006)).
¶ 12 Under Washington law, "[f]or a contract to exist there must be mutual assent to its essential terms." Jacob's Meadow Owners Ass'n v. Plateau 44 II, LLC, 139 Wash.App. 743, 765, 162 P.3d 1153 (2007) (citing Yakima County (W.Valley) Fire Prot. Dist. No. 12 v. City of Yakima, 122 Wash.2d 371, 388-89, 858 P.2d 245 (1993)). "`Mutual assent generally takes the form of an offer and an acceptance.'" Saluteen-Maschersky v. Countrywide Funding Corp., 105 Wash. App. 846, 851, 22 P.3d 804 (2001) (quoting Pac. Cascade Corp. v. Nimmer, 25 Wash. App. 552, 556, 608 P.2d 266 (1980)). "In determining the mutual intention of contracting parties, the unexpressed, subjective intentions of the parties are irrelevant; the mutual assent of the parties must be gleaned from their outward manifestations." Saluteen-Maschersky, 105 Wash.App. at 854, 22 P.3d 804 (citing City of Everett v. Estate of Sumstad, 95 Wash.2d 853, 855, 631 P.2d 366 (1981)).
¶ 13 "A contract may be oral as well as written, and a contract may be `implied in fact with its existence depending on some act or conduct of the party sought to be charged.'" Hoglund v. Meeks, 139 Wash. App. 854, 870, 170 P.3d 37 (2007) (quoting Bell v. Hegewald, 95 Wash.2d 686, 690, 628 P.2d 1305 (1981)). A finder of fact may deduce mutual assent to an agreement from the circumstances surrounding a transaction, inferring the existence of a contract based on a course of dealings between the parties or a common understanding within a particular commercial setting. Hoglund, 139 Wash. App. at 870-71, 170 P.3d 37 (citing Bell, 95 Wash.2d at 691, 628 P.2d 1305). "The burden of proving the existence of a contract is on the party asserting its existence." Jacob's Meadow, 139 Wash.App. at 765, 162 P.3d 1153 (citing Johnson v. Nasi, 50 Wash.2d 87, 91, 309 P.2d 380 (1957)).
¶ 14 With respect to whether the 2005 contract itself requires the parties to arbitrate Weiss's claims, we conclude that it does not. Lonnquist terminated the 2005 contract as of August 13, 2006. Weiss's claims did not accrue during the time that the 2005 contract was effective. Rather, her claims relate to her employment during August 2007, a full year after Lonnquist terminated the 2005 contract. Lonnquist's reliance on Naches Valley School District No. JT3 v. Cruzen, 54 Wash.App. 388, 775 P.2d 960 (1989), is misplaced. In that case, the employees' claims accrued during the period in which the arbitration agreement there at issue was in effect. See Naches Valley, 54 Wash.App. at 392-94, 775 P.2d 960. Because Weiss's claims did not accrue until more than *793 a year after the 2005 contract was terminated, the 2005 contract itself does not require the parties to arbitrate Weiss's claims.
¶ 15 Notwithstanding that the 2005 contract did not govern Weiss's employment during the pertinent time period, Lonnquist contends that the parties' purported agreement to arbitrate originates in the 2005 contract. After she terminated the 2005 contract, Lonnquist argues, she and Weiss entered into an implied employment contract containing the same agreement to arbitrate as was contained in the 2005 contract. Because, after the termination of the 2005 contract, Weiss continued to provide services to the firm of the same type as those rendered under the terminated contract, Lonnquist urges us to infer that she and Weiss impliedly agreed to the same arbitration provision as had been contained in that contract.
¶ 16 Under the common law of contracts, we will presume that, "where a contract of employment for a definite term expires, and the employee continues to render the same services, ... [the employee] is serving under a new contract having the same terms and conditions." Holton v. Hart Mill Co., 24 Wash.2d 493, 495, 166 P.2d 186 (1946) (citing Stewart Dry Goods Co. v. Hutchinson, 177 Ky. 757, 198 S.W. 17. (1917)); see also 2 RICHARD A. LORD, WILLISTON ON CONTRACTS § 6:43, at 589-92 (4th ed.2007) (explaining that "[w]hen a contract of employment for a definite time has been made, and the employee's services are continued after the expiration of the definite time without objection, the inference is ordinarily that the parties have assented to another contract for a term of the same length with the same salary and conditions of service"); I JOSEPH M. PERILLO, CORBIN ON CONTRACTS § 1.19, at 60 (rev. ed.1993) (explaining that when parties who have entered into a one-year or other fixed-term contract "proceed with performance after expiration of the year without making any new express agreement, of extension or otherwise .... a court may infer that the parties have agreed in fact to renew the one-year contract for another similar period"). However, even assuming that the presumption discussed in Holton applies equally to a situation in which an employment contract is terminated as it does to a situation in which a contract expires of its own accord, application of the presumption is not warranted in this case.
¶ 17 The presumption does not apply herein because the evidence is that Weiss did not continue to work during the pertinent time period under terms and conditions that were the same as those contained in the 2005 contract. To the contrary, the record establishes that Weiss was employed under terms that were different from those of the 2005 contract.[8] Pursuant to the 2005 contract, *794 Weiss was employed for a fixed term of one year, her employment was only terminable during the term under specific conditions, and she was guaranteed a salary. Throughout this controversy, however, Lonnquist has maintained that during the pertinent time period she employed Weiss at will and had no obligation to pay Weiss any particular salary.
¶ 18 It is inconsistent for Lonnquist to contend, on the one hand, that Weiss was an at-will employee, unprotected by the 2005 contract after it was terminated, and for her to assert, on the other hand, that Weiss's claims are subject to arbitration because the 2005 contract contained an arbitration provision. Relying exclusively on the 2005 contract, Weiss's continued employment after the contract's termination, and the presumption in Holton, Lonnquist insists that the parties impliedly agreed to arbitrate any employment-related claims. For the presumption to apply, however, the proof would have to be that the parties impliedly renewed every term of the 2005 contract. Yet the the evidence in the record and Lonnquist's pleadings render this presumption false because they establish that, whatever the terms of the parties' implied agreement were, the terms were not identical to those of the 2005 contract.
¶ 19 In effect, Lonnquist requests that we presume that the parties impliedly renewed some terms of the 2005 contract but not others. In so doing, she seeks to avail herself of a presumption discharging her burden of proof as to the existence of an implied agreement to arbitrate. In Holton, however, the court did not announce that parties could be presumed to have renewed some contractual terms but not others. To the contrary, the presumption recognized in Holton is that parties to a fixed-term employment contract have renewed the contract's terms in its entirety if the employee continues to render the same services after the contract expires. 24 Wash.2d at 495, 166 P.2d 186. Thus, Holton does not compel the result for which Lonnquist argues. Indeed, Lonnquist's theory that she and Weiss selectively renewed some terms of the 2005 contract is at odds with the presumption of complete renewal expressed in Holton.
¶ 20 A contract exists when there is "mutual assent to its essential terms." Jacob's Meadow, 139 Wash.App. at 765, 162 P.3d 1153. Nothing in the record establishes that an agreement to arbitrate was essential to Weiss's at-will employment during the pertinent time period. Nor does the record contain the type of evidence we might expect to find in support of Lonnquist's contention. A review of the record reveals no evidence concerning the arrangement the parties reached for Weiss's continued employment.[9] Because the record establishes that the parties did not renew the terms of the 2005 contract in its entirety, there is no basis on which to conclude that the parties mutually agreed to renew their agreement to arbitrate. Lonnquist had the burden of proving the existence of the purported agreement to arbitrate during the pertinent time period. Jacob's Meadow, 139 Wash.App. at 765, 162 P.3d 1153 (citing Johnson, 50 Wash.2d at 91, 309 P.2d 380). She did not meet this burden. Accordingly, the trial court did not err in denying the motion to compel arbitration.[10]
¶ 21 Affirmed.
We concur: APPELWICK, and BECKER, JJ.
NOTES
[1] Consistent with the parties' briefing, we refer to both Lonnquist individually and the firm bearing her name as "Lonnquist."
[2] The parties agreed that:

The term of this Agreement shall be one year, from November 1, 2005 through October 31, 2006. During that term, it may be terminated pursuant to the following:
a. [The firm] shall have the right to terminate Weiss immediately for cause. "Cause" includes malpractice, fraud, dishonesty or self-dealing, or other reason that would constitute "cause" under the common law of Washington State.... If [the firm] terminates Weiss for cause, she will receive only her base salary through the last date of her employment; Weiss shall not be entitled to any further benefits or payments.
b. Either party may terminate this Agreement without cause upon thirty (30) days' written notice.
Clerk's Papers (CP) at 41.
[3] The arbitration clause provided, in full:

Any dispute arising under this Agreement, including, without limitation, any common law or statutory claims for wrongful discharge, discrimination, or unpaid compensation, shall be submitted first to mediation, and if still unresolved, to binding arbitration. The parties shall cooperate to appoint a mediator and arbitrator by mutual agreement and to resolve disputes in a timely fashion. If no mutual agreement can be reached as to either the mediator or the arbitrator, the party winning the flip of a coin shall have the right to choose an appropriate neutral to serve in such capacity. Costs of mediation and arbitration shall be shared equally by [the firm] and Weiss; provided that the Arbitrator shall award reasonable fees and costs to the prevailing party.
CP at 41.
[4] In late August 2007, an attorney retained by Weiss contacted Lonnquist, urging her to pay Weiss's salary in full in light of the 2005 contract and to retract the comments about Weiss's departure that she had posted on the Internet. In response, Lonnquist rejected the notion that Weiss's employment with the firm was governed by the 2005 contract. The contract, she pointed out, was terminated as of August 13, 2006. Further, she explained, "since no new contract was negotiated, ... Ms. Weiss worked thereafter as an at-will employee." CP at 446.

In her response to Weiss's attorney's inquiry, Lonnquist stated the following:
Dear Mr. Dale:
I have received your August 31, 2007 letter regarding Reba Weiss in which you make reference to the November 1, 2005 contract. Apparently Ms. Weiss failed to inform you that on July 14, 2006, I served thirty days notice to terminate it. A copy of the 7/14/06 notice is enclosed. Accordingly, since no new contract was negotiated, the 11/1/05 contract terminated on August 13, 2006. Ms. Weiss worked thereafter as an at-will employee.
I continued to remind Ms. Weiss that the minimum standard for continued employment was 32 billable hours per week. I provided her both oral and written warnings. During her annual evaluation in January 2007, I rated her "unacceptable" on work quantity, noting that she had billed 400 hours below minimum standard in 2006.... Each week, she received a print out of her billable hours for the previous week. She continued to fall short of the standard, and indeed logged even fewer billable hours. It appeared that she was making no effort to increase her billable hours. In 18 months, she met standard only 3 times. In addition, she consistently failed to bring in sufficient revenue to justify her salary.
For those reasons I decided to terminate her. I had no obligation to provide her any notice when I terminated her in August, but did so as a kindness. To insure that Ms. Weiss did not exploit my kindness by continuing her pattern of drawing [a] salary without putting in sufficient billable hours, I placed her on a sliding-scale payment plan for her remaining days with my firm. Ms. Weiss thereafter chose not to return to work.
CP at 446.
[5] In her second amended answer, Lonnquist pleaded that

on July 14, 2006, pursuant to the terms of [the employment contract executed in November 2005], ... [Lonnquist] gave thirty days notice of intent to terminate such agreement, which resulted in its termination as of August 13, 2006, after which time [Weiss] was employed as an at-will employee.
CP at 14. In addition, Lonnquist asserted as an affirmative defense that Weiss's employment with the firm "was at-will, and thus could be terminated by either the employee or the employer at any time for no cause." CP at 17.
[6] In responding to Weiss's request for admissions, Lonnquist stated that the 2005 contract "was terminated effective August 13, 2006." CP at 201. She denied that it expired on October 31, 2006, the date of expiration expressed in the contract itself. In responding to a request for admission that she failed to pay Weiss any wages for any period of employment after August 15, 2007, Lonnquist denied that she had any responsibility to do so because Weiss did not have "any period of employment after August 15, 2007." CP at 211.
[7] Lonnquist asserts that the FAA governs this matter because Weiss's claims relate to an employment contract. Although the FAA's scope may encompass an employment contract containing an arbitration clause, see Adler, 153 Wash.2d at 341, 103 P.3d 773 (citing Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 119, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001)), the duties performed under the contract must involve interstate commerce for the FAA to apply. See Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 281, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995); Southland Corp. v. Keating, 465 U.S. 1, 14-15, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984); Bernhardt v. Polygraphic Co. of Am., 350 U.S. 198, 200-01, 76 S.Ct. 273, 100 L.Ed. 199 (1956). The party seeking to compel arbitration pursuant to the FAA bears the burden of showing the existence of an agreement containing an arbitration clause and affecting interstate commerce. Walters v. A.A.A. Waterproofing, Inc., 120 Wash.App. 354, 358, 85 P.3d 389 (2004) (quoting Harrison v. Nissan Motor Corp. in U.S.A., 111 F.3d 343, 348 n. 8 (3d Cir. 1997)), review granted and cause remanded on other grounds, 153 Wash.2d 1023, 108 P.3d 1227 (2005). Lonnquist has not shown that Weiss's employment duties involved or affected interstate commerce. Regardless of whether they did, we need not decide this issue as the threshold inquiry under both the FAA and the UAA is the same.
[8] Lonnquist makes much of the trial court's failure to enter written findings of fact and conclusions of law as to why it denied her motion to compel arbitration. However, the trial court was not required to enter written findings and conclusions. See CR 52(5)(B). Nor do the cases on which Lonnquist relies support her contention that the trial court erred in not entering written findings and conclusions. See Stein, 105 Wash.App. at 44-45, 17 P.3d 1266 (discussing why an order denying a motion to compel arbitration is appealable as a matter of right but not addressing whether written findings and conclusions are required); Mayer v. City of Seattle, 102 Wash.App. 66, 83, 10 P.3d 408 (2000) (involving an order awarding attorney fees); Herzog v. Foster & Marshall, Inc., 56 Wash.App. 437, 440-41, 783 P.2d 1124 (1989) (same as Stein); Olsen v. Allen, 42 Wash.App. 417, 420, 710 P.2d 822 (1985) (involving a protective order issued in a libel action).

Further, although the "existence of an implied contract is a question for the trier of fact," Kilthau v. Covelli, 17 Wash.App. 460, 462, 563 P.2d 1305 (1977), the trial court's determination not to enter written findings and conclusions is of no consequence here. We may sustain the trial court's ruling on "any theory established by the pleadings and supported by the proof." LaMon v. Butler, 112 Wash.2d 193, 200-01, 770 P.2d 1027 (1989) (citing Wendle v. Farrow, 102 Wash.2d 380, 382, 686 P.2d 480 (1984)). Nothing in the record indicates that the trial court received testimony in relation to Lonnquist's motion. The record contains only written materials. As we review de novo the trial court's decision, we are in the same position as the trial court to review these written materials. In addition, we note that, although it appears that the responses to request for admissions and the evidence of Lonnquist's correspondence with Weiss's counsel in late August and early September 2007 were not filed directly in relation to the motion to compel arbitration, such materials were before the trial court in relation to other matters, and the trial court stated in the order on appeal that it had reviewed "the file and pleadings herein." CP at 70. Accordingly, we review the entire record submitted on appeal.
[9] In an answer to one of Weiss's interrogatories, Lonnquist vaguely referred to a discussion that she had with Weiss on July 25, 2007, concerning Weiss's "counterproposal" after Lonnquist gave notice of her intent to terminate the 2005 contract. See CP at 273. At oral argument in this court, Lonnquist alluded to discussions that the parties had concerning Weiss's continued employment after termination of the written contract. But there is no evidence in the record shedding any light on the nature of these discussions or to what the parties may have agreed.
[10] Because we conclude that the parties did not enter into an arbitration agreement, we need not address the other issues raised by the parties.