FOR PUBLICATION

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

SEAN WILSON, individually and on behalf of all others similarly situated,
*Plaintiff-Appellee*,

v.

HUUUGE, INC., a Delaware corporation,
*Defendant-Appellant*.

No.18-36017

D.C. No.
3:18-cv-05276-
RBL

OPINION

Appeal from the United States District Court
for the Western District of Washington
Ronald B. Leighton, District Judge, Presiding

Argued and Submitted August 29, 2019
Seattle, Washington

Filed December 20, 2019

Before: M. Margaret McKeown and Jay S. Bybee, Circuit
Judges, and Fernando J. Gaitan, Jr.,* District Judge.

Opinion by Judge McKeown

---

*The Honorable Fernando J. Gaitan, Jr., United States District Judge
for the Western District of Missouri, sitting by designation.

## SUMMARY**

### Notice / Washington Law

The panel affirmed the district court's denial of HUUUGE Inc.'s motion to compel arbitration against a smartphone app user.

Under Washington law, the panel held that because Huuuge did not provide reasonable notice of its Terms of Use, the app user did not unambiguously manifest assent to the terms and conditions or the imbedded arbitration provision. The panel held that the app user had neither actual notice nor constructive notice of the Terms of Use, and thus was not bound by Huuuge's arbitration clause in the Terms.

### COUNSEL

Jaime Drozd Allen (argued), Stuart R. Dunwoody, Cyrus E. Ansari, and Benjamin J. Robbins, Davis Wright Tremaine LLP, Seattle, Washington, for Defendant-Appellant.

Ryan D. Andrews, Roger Perlstadt (argued), and Alexander G. Tievsky, Edelson PC, Chicago, Illinois, for Plaintiff-Appellee.

---

** This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## OPINION

McKEOWN, Circuit Judge:

Smartphone applications have a ubiquitous presence in our everyday lives. The question of first impression for our court is under what circumstances does the download or use of a mobile application ("app") by a smartphone user establish constructive notice of the app's terms and conditions?

HUUUGE Inc. ("Huuuge") appeals the district court's denial of its motion to compel arbitration against Sean Wilson, a smartphone app user. Because Huuuge did not provide reasonable notice of its Terms of Use ("Terms"), Wilson did not unambiguously manifest assent to the terms and conditions or the imbedded arbitration provision. We affirm the district court's denial of Huuuge's motion to compel arbitration and to stay proceedings.

## BACKGROUND

Huuuge is the owner and operator of the smartphone app Huuuge Casino, which allows smartphone users to gamble with chips to play casino games. Users can gamble either with a limited number of free chips or with chips purchased through the app. Wilson downloaded the app from Apple's App Store in early 2017 and played Huuuge Casino for over a year.

In April 2018, Wilson filed this class action lawsuit, alleging Huuuge violated Washington gambling and consumer protection laws by charging users for chips in its app. Huuuge moved to compel arbitration under the Federal Arbitration Act ("FAA"), alleging that Wilson was on

inquiry notice of its Terms, which include a binding arbitration provision that prohibits class actions.

Huuuge does not require users to affirmatively acknowledge or agree to the Terms before downloading or while using the app. Users can access Huuuge's Terms in two ways: 1) reading the Terms before downloading the app, although the user is not required to do so; or 2) viewing the Terms during game play, which is similarly not necessary to play the game. Either way, the user would need Sherlock Holmes's instincts to discover the Terms.

Typically, a user would first search for the app in a smartphone app store. One option is to download the app directly from the search results, in which case the user does not view anything that alerts him to the existence of the Terms. Alternatively, instead of a direct download, the user would need to click through to Huuuge Casino's landing page. Next, the user must click on the small blue text stating "more" in the app's description (**Figure A**), which reveals the app's full profile (**Figure B**). The user would then need to scroll through several screen-lengths of text to encounter a paragraph that starts with "Read our Terms of Use," and includes the text of a link to the Terms (**Figure C**). The link, however, doesn't magically conjure the Terms. Instead, the user must copy and paste or manually enter the URL into a web browser to access the Terms.

## Figure A



**Figure B**



# Figure C



Once a user has downloaded the app, the user can play games immediately. During gameplay, a user can view the Terms by accessing the settings menu. The settings menu can be accessed by clicking on a three dot "kebob" menu button in the upper right-hand corner of the home page (**Figure D**).

**Figure D**



*If* a user clicks on the button, a pop-up menu of seven options appears (**Figure E**). The fifth option is titled "Terms & Policy" and reveals the Terms, including the arbitration agreement.

**Figure E**



It is not necessary for a user to open the settings menu while playing the app. Nor is there a requirement to acknowledge or agree to the Terms when opening the app, creating an account, playing the game, or at any other point.

When a user accesses the Terms, the following arbitration provision appears:

> EXCEPT AS SPECIFICALLY STATED HEREIN, ANY DISPUTE OR CLAIM BETWEEN YOU AND HUUUGE ARISING OUT OF, OR RELATING IN ANY WAY TO, THE TERMS, THE SERVICE OR YOUR USE OF THE SERVICE, OR ANY PRODUCTS OR

SERVICES OFFERED OR DISTRIBUTED
THROUGH THE SERVICE ("DISPUTES")
SHALL BE RESOLVED EXCLUSIVELY
BY FINAL, BINDING ARBITRATION. . . .

YOU AGREE THAT YOU MAY BRING
CLAIMS AGAINST HUUUGE ONLY IN
YOUR INDIVIDUAL CAPACITY AND
NOT AS A PLAINTIFF OR CLASS
MEMBER IN ANY PURPORTED CLASS
OR REPRESENTATIVE PROCEEDING.
IN ADDITION, YOU AGREE THAT
DISPUTES SHALL BE ARBITRATED
ONLY ON AN INDIVIDUAL BASIS AND
NOT IN A CLASS, CONSOLIDATED OR
REPRESENTATIVE ACTION. THE
ARBITRATOR DOES NOT HAVE THE
POWER TO VARY THESE PROVISIONS.

Huuuge claims Wilson is bound by the arbitration provision because Wilson had constructive notice both when he downloaded the app and during its use. Wilson, however, argues the app's Terms were not conspicuous when he downloaded the app or during gameplay. The district court agreed with Wilson and denied Huuuge's motion to compel arbitration. The district court further found that "actual knowledge [was] not an issue" because Huuuge did not "present any evidence of Wilson's actual knowledge."

## ANALYSIS

The FAA requires district courts to stay judicial proceedings and compel arbitration of claims covered by a written and enforceable arbitration agreement. 9 U.S.C. § 3. The limited role of the district court under the FAA is to

determine "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). This dispute falls squarely within the first prong of the inquiry. We review de novo both the denial of the motion to compel arbitration, *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008), and "[t]he interpretation and meaning of contract provisions," *Milenbach v. Comm'r*, 318 F.3d 924, 930 (9th Cir. 2003).

Huuuge, as the party seeking to compel arbitration, must prove the existence of a valid agreement by a preponderance of the evidence. *Norcia v. Samsung Telecomms. Am., LLC*, 845 F.3d 1279, 1283 (9th Cir. 2017). To determine whether such an agreement exists, "federal courts 'apply ordinary state-law principles that govern the formation of contracts.'" *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

The parties agree that Washington state law governs the validity of the arbitration agreement since there is no choice of law provision in the agreement and the district court has diversity jurisdiction. *See First Options of Chi., Inc.*, 514 U.S. at 944.

As we have acknowledged many times, although online commerce has presented courts with new challenges, traditional principles of contract still apply. *See, e.g.*, *In re Holl*, 925 F.3d 1076, 1084 (9th Cir. 2019); *Nguyen*, 763 F.3d at 1175. A contract is formed when mutual assent exists, which generally consists of offer and acceptance. *Weiss v. Lonnquist*, 224 P.3d 787, 792 (Wash. Ct. App. 2009). Like many states, Washington does not allow parties to shirk contract obligations if they had actual or constructive notice

of the provisions. *See W. Consultants, Inc. v. Davis*, 310 P.3d 824, 827-28 (Wash. Ct. App. 2013); *see also Nguyen*, 763 F.3d at 1177 (applying similar California law). In the context of online agreements, the existence of mutual assent turns on whether the consumer had reasonable notice of the terms of service agreement. *Nguyen*, 763 F.3d at 1177; *Wilson v. Playtika, Ltd.*, 349 F. Supp. 3d 1028, 1037 (W.D. Wash. 2018).

We first consider the issue of actual notice. The district court determined actual notice was not at issue when it denied Huuuge's motion to compel. According to the district court, at best Huuuge suggested in its reply brief that "Wilson was 'likely' to have viewed the Terms at some point because he played the game many times." We agree with the district court's conclusion that "Huuuge does not present any evidence of Wilson's actual knowledge." Now Huuuge contends it was entitled to additional discovery with respect to actual notice. That request was first raised in a footnote in Huuuge's reply brief on its motion to compel arbitration; Huuuge stated if the district court planned on ruling against Huuuge, it should first be allowed to engage in limited discovery.

Although the district court did not expressly deny Huuuge's discovery request, it implicitly did so in its reasoning rejecting Huuuge's argument. Whether we review this issue de novo or for abuse of discretion, the result is the same. *See Stevens v. Corelogic, Inc.*, 899 F.3d 666, 677 (9th Cir. 2018) (reviewing denial of discovery de novo where the district court denies a motion to compel additional discovery as moot without considering its merits).

The district court did not err in not permitting discovery on actual notice before denying the motion to compel arbitration. Huuuge wanted it both ways—if it won the

motion to compel, great; if it didn't win, only then did it want discovery. Although Huuuge had the burden to present evidence of actual notice, it rolled the dice and chose not to pursue additional discovery at the outset, instead moving to stay discovery pending the motion to compel arbitration. Huuuge, as operator of the app, undoubtedly had at least some information probative of actual notice in its control, but it offered nothing on the actual notice issue. Finally, Huuuge waived its discovery request as it was insufficiently raised in a two-line footnote in a reply brief. Put simply, Huuuge's discovery request was too little, too late.

We now move to the issue of constructive notice. Just as we have applied traditional contract principles to online contracts, we do so here too. Online contracts fall into two broad categories. *Nguyen*, 763 F.3d at 1175-76. Clickwrap agreements require users to affirmatively assent to the terms of use before they can access the website and its services. Browsewrap agreements do not require the user to take any affirmative action to assent to the website terms. *Id*. In some situations, a user may not even know a website has a user agreement.

Huuuge's agreement is unambiguously a browsewrap agreement. Wilson was not required to assent to Huuuge's Terms before downloading or using the app—or at any point at all. Huuuge did not notify users that the app had terms and conditions, let alone put them in a place the user would necessarily see. Instead, a user would need to seek out or stumble upon Huuuge's Terms, either by scrolling through multiple screens of text before downloading the app or clicking the settings menu within the app during gameplay.

In the absence of actual knowledge, a reasonably prudent user must be on constructive notice of the terms of the contract for a browsewrap agreement to be valid. *Id.* at 1177.

In *Nguyen v. Barnes & Noble*, we stressed that "the onus must be on website owners to put users on notice of the terms to which they wish to bind consumers." *Id.* at 1179. The burden similarly falls on app operators.

Users are put on constructive notice based on the conspicuousness and placement of the terms and conditions, as well as the content and overall design of the app. *Id.* at 1177. For example, courts will not enforce agreements where the terms are "buried at the bottom of the page or tucked away in obscure corners of the website," especially when such scrolling is not required to use the site. *Id.* (citing to *Specht v. Netscape Commc'ns Corp.,* 306 F.3d 17, 23 (2d Cir. 2002)). Similarly, courts decline to enforce agreements where the terms are available only if users scroll to a different screen, *Hines v. Overstock.com, Inc.,* 668 F. Supp. 2d 362, 367 (E.D.N.Y. 2009), complete a multiple-step process of clicking non-obvious links, *Van Tassell v. United Mktg. Grp.,* 795 F. Supp. 2d 770, 792-93 (N.D. Ill. 2011), or parse through confusing or distracting content and advertisements, *Starke v. SquareTrade, Inc.*, 913 F.3d 279, 293 (2d Cir. 2019); *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 237 (2d Cir. 2016). Even where the terms are accessible via a conspicuous hyperlink in close proximity to a button necessary to the function of the website, courts have declined to enforce such agreements. *Nguyen*, 763 F.3d at 1178-79.

Huuuge's app is littered with these flaws. When downloading the app, the Terms are not just submerged— they are buried twenty thousand leagues under the sea. Nowhere in the opening profile page is there a reference to the Terms. To find a reference, a user would need to click on an ambiguous button to see the app's full profile page and scroll through multiple screen-lengths of similar-looking paragraphs. Once the user unearths the paragraph

referencing the Terms, the page does not even inform the user that he will be bound by those terms. There is no box for the user to click to assent to the Terms. Instead, the user is urged to read the Terms—a plea undercut by Huuuge's failure to hyperlink the Terms. This is the equivalent to admonishing a child to "please eat your peas" only to then hide the peas. A reasonably prudent user cannot be expected to scrutinize the app's profile page with a fine-tooth comb for the Terms.

Accessing the terms during gameplay is similarly a hide-the-ball exercise. A user can view the Terms through the "Terms & Policy" tab of the settings menu. Again, the user is required to take multiple steps. He must first find and click on the three white dots representing the settings menu, tucked away in the corner and obscured amongst the brightly colored casino games. The "Terms & Policy" tab within the settings is buried among many other links, like FAQs, notifications, and sound and volume. The tab is not bolded, highlighted, or otherwise set apart.

Huuuge argues Wilson's repeated use of the app places him on constructive notice since it was likely he would stumble upon the Terms during that time period. However, just as "there is no reason to assume that [users] will scroll down to subsequent screens simply because screens are there," there is no reason to assume the users will click on the settings menu simply because it exists. *Specht*, 306 F.3d at 32. The user can play the game unencumbered by any of the settings. Nothing points the user to the settings tab and nowhere does the user encounter a click box or other notification before proceeding. Only curiosity or dumb luck might bring a user to discover the Terms.

Instead of requiring a user to affirmatively assent, Huuuge chose to gamble on whether its users would have

notice of its Terms. The odds are not in its favor. Wilson did not have constructive notice of the Terms, and thus is not bound by Huuuge's arbitration clause in the Terms. We affirm the district court's denial of Huuuge's motion to compel arbitration.

**AFFIRMED.**